## McKenney, et al. v. Page, et al.

(Decided February 8, 1912.)

Appeal from Scott Circuit Court.

1.  Settlement of an Estate—Equities Between Children and Grand-children.—This appeal involves the settlement of an unfortunate family difference. The equities between the children and grand-children of Dr. C. J. Graves must be determined from several deeds, wills and contracts appearing in the record. The testimony shows that Cora Page executed certain papers when she did not understand what her rights were.

2.  Purposes Expressed in Will—Fair Agreement.—The equities be-tween these parties require that the purposes expressed in the will of Dr. Graves be carried out. Appellee possibly sustained a loss by her surrender of this contract and appellants possibly lost something by coming to the agreement, but it was reasonably fair and the parties should be made to abide by it.

3.  Mortgagee in Possession—Limitation Not Available.—Dr. Graves was a mortgagee in possession and it would be unreasonable to say that if he had been alive at the time this action was brought, and it had been against him that he could have successfully pleaded the fifteen year statute of limitations or laches and his heirs and devisees occupy the same position he would have if living.

MAURY KEMPER and GEORGE R. HUNT for appellants.

JOUETT & JOUETT, BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This appeal involves the settlement of an unfortunate family difference. The equities between the children and grandchildren of Dr. C. J. Graves must be determined from several deeds, wills and contracts appearing in the record. Mr. Page, now deceased, who was the husband of Mrs. Page, owned a tract of land of 140 acres located near Georgetown, Ky. He died while living upon the land, in 1885, leaving a widow and three children. There was a mortgage upon the land to secure about $7,000.00 and the mortgagee foreclosed the lien and caused the land to be sold in 1885 or 1886, to satisfy the debt. Appellee, Cora Page, bid the land in at the Commissioner's sale at the price of about $7,900.00, but was unable to give a bond for the purchase money and her father, Dr. C. J. Graves, agreed to execute the bond, pay the purchase price and have the deed made to himself, which he did and executed to his daughter, Cora C. Page, the following writing:

"Mrs. Cora C. Page this day assigned and transferred to me her purchase of the Page land sold under the judgment of the Scott Circuit Court, and having ordered the deed made to me, I now agree and undertake

that I will, at some convenient time, sell said land and after paying off the debts, interest and costs which have accrued on said land by reason of said judgment and sale, to pay over to said Mrs. Page all excess over and above the amount of said debt, interests and costs and the interest and improvements which will hereafter accrue and be made.

"Given under my hand this September 12, 1888.

"CAZWELL J. GRAVES."

This contract with the deed operated as a mortgage in behalf of Dr. Graves, to secure him in the payment with interest, of the money he paid for the land and the improvements he made. Skinner v. Miller, 5 Litt., 86; Edrington v. Harp, 3 J. J. Marshall, 354; Green v. Ball, 4 Bush, 586; Sheffield v. Day., 90 S. W., 546. Dr. Graves, his wife, Cora C. Page and her three children resided in the same building upon this land from the time of the purchase at the commissioner's sale until the death of Dr. Graves in 1904. Dr. Graves controlled the farm and received all the proceeds therefrom from that time to his death and there was never an accounting between him and his daughter, Cora Page. On April 3, 1895, Dr. Graves executed a will which was duly probated December 8, 1904. So much of the will that is necessary to elucidate the questions involved, is as follows:

"1st. After the payment of all my just debts and funeral expenses I give and devise to my wife, Jane C. Graves, all of my property of every kind whatsoever, the personalty absolutely and the realty for and during her natural life; and after her death the real estate shall pass and go to my children, Cornelia C. McKenney, wife of W. F. McKenney, Cora C. Page, C. J. Graves, Jr., and S. P. Graves, share and share alike during their natural lives, with remainder to their children and heirs of their body, and if my son, S. P. Graves, shall die leaving no heirs of his body at the time of his death, then his share shall pass to the other three or their heirs per stirpes, provided however, that whereas Cora C. Page holds an article of agreement made with me to this effect; that I, having purchased from her the farm on which I now live, at or about eight thousand dollars it was therein agreed that whenever said farm is sold, if it realizes more than the sum named in the agreement and the costs of improvement put on the place by me and the taxes, she was to have the

overplus; now should my daughter Cora elect to stand by this agreement and require it to be carried out then she is to take no part of my estate nor any portion of what I herein give to my son, S. P. Graves, in the event of his death without heirs of his body, and the other three named, Cornelia C. McKenney, C. J. Graves, Jr., and S. P. Graves are to take the whole subject to the limitations above.

"2. My reason for not giving anything to my son, E. H. Graves, or his children, is that I have already given him more than I am able to give the other children, having given him seven thousand ($7,000) dollars in land besides moneys, and the same reason applies to my daughter, Mary E. Samuell, I having given and paid for her and her husband, W. R. Samuell, about the same amount, to-wit: Seven thousand dollars, and as to my daughter, Cora C. Page, if she elects to stand by the article of agreement named above it will make her at least equal with the other three children and besides I have paid moneys and interest to and for her husband and I have been keeping and providing for her and her three children since June, 1886.

"3. My real estate consists of a farm of about one hundred and forty acres on the Paynes Depot pike, on which I now live, and after the death of my wife, those who take my real estate by virtue of the second clause of this will are empowered to sell and convey the same and make a good title to the purchaser notwithstanding my limitations made in said first clause."

It appears that on July 3, 1896, Dr. Graves appended a codicil to his will which was probated at the same time the will was. It is as follows:

"I make this addition to my will above. I charge Cora C. Page board and clothing for herself and three children at the rate of two hunded dollars per year, from June, 1886, as long as they may stay with me. I write this myself July 3, 1896.

"Cazwell J. Graves."

It appears from the record that on October 23, 1893, Dr. Graves executed and delivered a deed to his wife for seventy acres of this land, but appears to have disregarded this conveyance when making his will, as he gave his wife a life estate only in the whole of it. It appears that all the parties knew of Cora Page's claim to this land and that if it was valid her equities were superior to those of Jane C. Graves, her mother, under the con-

veyance of 1893 from her husband. Jane C. Graves, C. J. Graves and Mrs. McKenney employed counsel and they and their counsel with Cora C. Page had a private conference at their home one evening soon after the death of Dr. Graves. Cora Page was told at that conference that her claim under the contract of 1888 was not of any value to her; that the money paid for the land by her father, the interest and the costs of the improvements, the insurance and taxes paid thereon by her father to his death, and the $200 a year charged against her for the board and clothing of herself and children, would more than offset her claim, and that it would, therefore, be to her interest to release her claim under the contract of 1888 and take her part under the will. It was not stated to her—no mention was made of it— that her father's estate would have to account to her for the reasonable rent of her place from the time he took possession until his death, nor that the claim for board, unless she and her father had a contract with reference thereto, was invalid, and if valid she had a right to reduce it to the extent of the value of her and her children's services rendered Dr. Graves. While the attorney present made the statements above ascribed to him, he expressly stated to Cora Page that he did not wish her to take his advice, but wanted her to see another attorney with reference to the matter. A few days after this consultation Cora C. Page and the attorney did go into Georgetown and see another attorney (who died before the institution of this action) and the attorney stated to him the substance of what was stated at the private conference, and further that in order to bring about a settlement and have peace in the family he had advised Mrs. Page to release her claim and take under the will of her father, and the attorney they went to consult then advised her to sign the release of her claim. No mention was made to him of the rents of the farm or the validity or invalidity of the charge for board, appellee, Mrs. Page, claimed, however, at all times, that this charge was unjust and that she ought not to have it to pay. She then went to the clerk's office with appellants' attorney and he wrote a release upon the margin of the record where the contract was recorded, which is as follows:

"This contract is now by me released in accordance with a contract heretofore entered into by me with the

heirs of Dr. C. J. Graves and my mother, as his executrix.''

A few days thereafter the widow and all the devisees named in the will signed and executed a writing releasing Cora Page from the payment of the $200 a year charged her in the codicil of the will. After these writings were executed and without knowledge or consent of Cora Page, as claimed by her, the widow, Jane C. Graves, renounced the provisions of her husband's will and took under the statute. This renunciation was made four days before the twelve months expired. Previous to this renunciation, there was what was called a ''quit claim deed'' executed by the devisees named in Dr. Graves' will to his widow, Jane C. Graves, to the 70 acres of land previously deeded to her by Dr. Graves. The first part of this deed explains that there was a mistake made in giving the boundary in the deed of 1893; that the boundary of that deed contained more than 70 acres, the amount intended to be conveyed. The granting clause, in part, is as follows:

''Now, therefore, for the purpose of correcting such mistake, and for the purpose of definitely fixing the boundaries of the land of the said Jane C. Graves, in consideration of the sum of one ($1) dollar cash in hand paid, and for the further consideration of the execution by the party of the second part to the parties of the first part of a quit claim deed to the remainder of the tract.''

The habendum is in part as follows:

''The parties of the first part do hereby release and quit claim unto said party of the second part her heirs and assigns, all the right title and interest of them and each of them in and to said property.''

The effect of these writings was to place the title to the 70 acres of land referred to in Jane C. Graves and the title to the balance in the devisees named in Dr. Graves' will.

The testimony shows clearly that Cora Page executed these papers when she did not understand what her rights were; that she did it under a mistake of both law and facts, and it appears that she did not understand them at the time she gave her deposition. The widow, Jane C. Graves, died before this action was instituted, and S. P. Graves died before his mother and without children. The effect of the execution of this release by Cora C. Page and the execution of the writing referred to by the widow and devisees named in the will, was to

give Cora C. Page and her children one-third of the 140 acres of land, but the trouble arises from the quit claim deeds referred to which were executed in March, 1905, and the will of Jane C. Graves, which was executed October 19, 1905, and probated in 1910, in which she bequeathed this 70 acres to her children, C. J. Graves, S. P. Graves and Cornelia McKenney. In the same year she appended a codicil to her will, in which she provided that, as S. P. Graves had died without leaving children, the other two children named should take the whole of it. Clause five of her will is as follows:

"My reasons for not leaving anything to my daughters, Mrs. Samuell and Mrs. Page and the children of my son, E. H. Graves, are the same given by my husband in his will."

The reason given by Dr. Graves for not giving Mrs. Samuell and E. H. Graves anything was because he had theretofore given each of them more than he was able to give any of the other children. The doctor did not leave Cora Page and her children out, but gave her as much as he gave his other children named, provided she did not contend for her right under the contract heretofore copied, and as she had released that by agreement with her mother and the devisees named in the will, she was entitled to take an equal share with the others under the will of her father. We can not presume that her mother intended to do any wrong, but she was evidently mistaken as to Cora Page's situation, when she executed her will. While it is not said in so many words, it is evident from this record and the will itself that the codicil written by Dr. Graves with reference to the charge for board and clothing, was added for the purpose of inducing Cora Page not to claim under her contract with him in which event he wished her to share with the other children named; and the widow misunderstood the language and purport of the doctor's will when she executed hers. The equities between these parties, require that the purposes expressed in the will of Dr. Graves be carried out. Appellee possibly sustained a loss by her surrender of this contract, and appellants possibly lost something by coming to that agreement, but it was reasonably fair and the parties should be made to abide by it. The land is proved to be worth about $15,000 and to have had a rental value for the period Dr. Graves was in possession, of about $700 a year. The only thing in the way is the will of Jane Graves, the widow. She was a

party, however, to this agreement as well as her co-devisees and, as no one else is interested, there is nothing to prevent a court of equity from enforcing the agreement of compromise. Appellants claim, however, that appellee, Cora Page, sustained no loss by reason of her release of her contract with her father as it was barred by the fifteen year statute of limitations, and that she was also estopped from recovering anything thereunder by reason of her laches. Appellants' counsel are mistaken in both of these contentions. Dr. Graves, the mortgagee, entered upon and took possession of the land at the date of the contract and remained in possession thereof until his death, and he agreed, in the contract under which he took possession, that he would at some convenient time sell the land and, after paying all the debts, etc., to pay the balance of the money for which the land sold, to Cora Page; and when he wrote his will in 1895, he recognized the binding obligations in that contract, and, in effect, conceded that Cora Page had rights and privileges thereunder. Cora Page had no right to institute an action upon this contract until her father violated it or renounced its provisions, and there is not an intimation in the record that he did either. The mortgagor and mortgagee were members of the same family, and lived in the same dwelling upon the land, and it was to the interest of both to find a purchaser who would pay a good consideration for the land, and the presumption is that they endeavored to do so, but seem to have found no convenient time to sell during the life of Dr. Graves. It is not reasonable to say that Cora Page should have brought this action against Dr. Graves during his lifetime. The fifteen year statute of limitations and the principles of estoppel do not apply in this case; the only persons interested in the matter are C. J. Graves, Mrs. McKenney and appellee, the heirs and devisees of Dr. Graves—no third persons or innocent persons are interested in any way.

The case of Chase v. Chase, 20 R. I., 202, the court said:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly, or slowly within limits allowed by the law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, becomes so

changed that he can not be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right.''

In 27 Cyc., page 1820, it is said:

''Very long and unreasonable delay in asserting a right to redeem, amounting to laches, which is not attributable to ignorance and which is not explained or sufficiently excused, will justify a court of equity in refusing its aid to the party seeking to redeem. Of course there can be no imputation of laches against a party who was meanwhile ignorant of his rights, and the court will listen to any plausible excuse for the delay.''

Dr. Graves was a mortgagee in possession, and it would be unreasonable to say that if he had been alive at the time this action was brought and it had been against him, that he could have successfully pleaded the fifteen year statute of limitations or laches, and his heirs and devisees occupy the same position he would have. See Fenwick v. Mace's Exors., 1 Dana, 280; Hendrix's Admrs. v. Hendrix, 29 Ky. Law Rep., 1084, and 27 Cyc., page 1237.

It is our opinion that the lower court should have required the parties to settle by the agreement made at the time Cora Page entered the release of her contract.

The judgment is reversed and cause remanded for further proceedings consistent herewith.