## Citizens Bank of Shelbyville, etc. v. Mutual Trust & Deposit Company.

## Citizens Bank of Waddy, etc. v. Mutual Trust & Deposit Company.

(Decided December 9, 1924.)

### Appeals from Shelby Circuit Court.

1. Corporations—Vendee Under Contract of Sale of Stock May Compel Transfer on Books of Company.—A contract of sale of corporate stock passes rights of vendor, and vendee may compel transfer on books of corporation by proper showing; Ky. Stats., sections 545, 546, being only for protection of company.

2. Principal and Agent—Blank Power of Attorney Authorizing Transfer of Stock Not Revoked by Death of Maker.—Where owner of certificate of stock indorsed it in blank, and executed and delivered power of attorney in blank authorizing transfer of stock, such power is not revoked by death of owner.

3. Estoppel—Where Blank Power of Attorney to Transfer Stock Certificates Executed, Transferee Held Not to Bear Loss, Though Owner Not Indebted.—Where owner of certificates of bank stock delivered them to a creditor, with blank power of attorney authorizing creditor to transfer them, and creditor delivered them to plaintiff as collateral security for a debt, held that amount of

owner's indebtedness to creditor at time of his death was immaterial, and owner must bear the loss, having made loss possible.

4. Corporations—Holding of Stock in Domestic Bank by Foreign Corporation Not Against Public Policy.—The holding of stock in a Kentucky bank by a foreign corporation is not against public policy.

E. B. BEARD and WILLIS, TODD & WILLIS for appellants.

STOTSENBURG & WEATHERS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

These two appeals on the same record will be disposed of in one opinion. In January, 1919, E. W McCormack held five shares of the capital stock of the Citizens Bank of Waddy, Kentucky, also three shares of the capital stock of the Citizens Bank of Shelbyville, Kentucky. McCormack delivered these certificates of stock to Morgan & Company, who were brokers in Louisville. Upon each certificate he signed a writing transferring it to ————— and he also at the same time delivered to them a power of attorney to —————, authorizing such person to transfer the stock to —————, on the books of the company. These were the usual papers executed where stock was put on the market. The blanks were left so that the purchaser could fill in the blanks and have the stock transferred to him when it reached the hands of a purchaser who wished to hold the stock. Morgan & Company fell in debt to the Mutual Trust & Deposit Company of New Albany, Indiana, and delivered the shares of stock with accompanying papers to it as collateral security for a debt. They did not pay the debt and became bankrupt. The trust company then, by appropriate proceedings, sold the stock and purchased it at the sale. The two banks refused to recognize the trust company as a stockholder and this action was brought to require them to issue the stock to the trust company. On final hearing the circuit court adjudged the plaintiff the relief sought. The defendants appeal.

E. W. McCormack is dead. His executrix filed her petition and answer claiming the stock for his estate. The sum of the position of the appellants on the appeal is that McCormack paid Morgan & Company all he owed them; that he died before the blanks in the power of attorney were filled out and that the power of attorney was vacated by his death.

Sections 545 and 546 prescribe how shares of stock may be transferred on the books of the company, but the statute is only for the protection of the company. A contract of sale passes the rights of the vendor and the vendee may compel the transfer upon the records of the company by a proper showing. American, etc., Co. v. Bayless, 91 Ky. 105, 14 C. J. 672. In Wills v. Weideman Brewing Co., 171 Ky. 681, this court thus defined the nature of stock certificates:

> "Although neither in form nor character is a stock certificate negotiable paper, it nearly approximates it where, as in the case of the lost certificates here involved they are endorsed in blank by the owner with power of attorney to transfer them to anyone who may obtain possession of them as holder, for such endorsement is a notification to all persons interested to know that whoever in good faith buys the stock and produces it to the corporation regularly assigned with power to transfer will be entitled to have the stock transferred to him. Indeed, it goes farther, for it assures the holder that the corporation will not transfer the stock to anyone not in possession of the certificates." To the same effect see 14 C. J. 665.

From the nature of the transaction and the purpose of the instruments such a power of attorney is not revoked by the death of the maker, Cook on Corporations, sections 375, 380; 14 C. J. 676, 679; 4 Thompson on Corporations 4356; First National Bank v. Lanier, 11 Wallace 369.

It is not material how much McCormack owed Morgan & Company at his death. He put the paper in their hands in a form which authorized them to sell it or otherwise dispose of it and as between two innocent persons he must bear the loss who made the loss possible. In a case not unlike this the United States Supreme Court said:

> "Here one of two innocent persons must suffer and the question at last is, Where shall the loss fall? It is undeniable that the broker obtained the stock certificates, containing all the *indicia* of ownership and possibility of ready transfer, from one who had possession with the bank's consent, and who brought the certificates to him, apparently clothed with the

full ownership thereof by all the tests usually applied by business men to gain knowledge upon the subject before making a purchase of such property. On the other hand, the bank, for a legitimate purpose, with confidence in one of its own employes, intrusted the certificates to him, with every evidence of title and transferability upon them. The bank's trusted agent, in gross breach of his duty, whether with technical criminality or not is unimportant, took such certificates, thus authenticated with every evidence of title, to one who, in the ordinary course of business, sold them to parties who paid full value for them. In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible." Nat'l Safe Deposit Co., etc. v. Hibbs, 229 U. S. 391.

It is urged in the briefs that the transaction between McCormack and Morgan & Company was a gambling in futures and therefore the papers were void. But the proof wholly fails to support this defense under the rule laid down by this court in Sawyer, etc. v. Taggart, 77 Ky. 730.

It is also insisted it is against public policy that a foreign company should hold stock in a Kentucky bank. We are referred to no authorities sustaining this and know of none. 7 R. C. L., p. 296.

Judgment affirmed.