## BancoKentucky Co. v. Weil et al.

(Decided March 5, 1935.)

244

DAVID R. CASTLEMAN and J. D. MOCQUOT for appellant.

WHEELER, WHEELER & SHELBOURNE for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In May, 1930, the appellees, Jesse Weil and his wife, Vivien Weil, were the owners of 528 shares of the capital stock in the Mechanics' Trust & Savings Bank of Paducah, Ky.

Jesse Weil, acting for himself and as agent of his wife, in May, 1930, entered into negotiations with the appellant, BancoKentucky, a banking institution of

Louisville, Ky., for an exchange of the stock owned by him and his wife in the Mechanics' Bank, for stock in BancoKentucky.

The trade was finally consummated in September, 1930. The ratio of exchange of stock was nine to one, and Weil received 4,252 shares of Banco stock for the 528 shares of stock in the Mechanics' Bank, and an exchange of stock certificates were made between the parties and the BancoKentucky stock was transferred on its books to Weil, but the Mechanics' Bank stock owned by Weil had not been transferred on the books of the Mechanics' Bank to BancoKentucky.

Soon thereafter, BancoKentucky suspended business on November 17, 1930, and on November 24, 1930, a receiver for the institution was appointed by the Jefferson circuit court, and all of its assets were placed in the hands of the court's receiver.

On the same day, November 24, 1930, Weil and his wife filed this suit in the McCracken circuit court, seeking a rescission of the trade by which they had disposed of their bank stock in exchange for stock in BancoKentucky.

For their cause of action against BancoKentucky, they alleged that they had been induced to make the exchange of stock by false and fraudulent representations as to BancoKentucky's relations to, and business connections with, Caldwell & Co., an investment house located at Nashville, Tenn.

Weil stated that he had heard rumors to the effect that BancoKentucky had acquired or was negotiating for an interest in Caldwell & Co.; that he had some knowledge of the business affairs of Caldwell & Co. and did not approve of the holdings of that company in certain localities and institutions, and was not favorably impressed with the idea of BancoKentucky acquiring any interest in Caldwell & Co., and so advised James B. Brown, president of BancoKentucky, and Brown told him that no trade had been consummated between his bank and Caldwell & Co., and that the negotiations pending between them would not be consummated until and when an audit of Caldwell & Co. had been made and it was ascertained that it was in good standing. Later, an announcement appeared in the press in the early part of June, to the effect that an agreement had been

reached between BancoKetucky and Caldwell & Co., but he assumed that such transaction was subject to an audit as he had been informed by Mr. Brown. Later, from time to time, and before the trade was consummated, Weil had various conversations with Mr. Brown and Mr. Jones, vice president of BancoKentucky, and they both reaffirmed their previous statements made to Weil to the effect that no deal had ben closed with Caldwell & Co., nor would not be until a satisfactory audit was made. He alleged that as a matter of fact the trade between BancoKentucky and Caldwell & Co. had been finally consummated on May 29, 1930, and BancoKentucky had acquired several hundred thousand dollars interest in Caldwell & Co., and that Mr. Brown and Mr. Jones, president and vice president, respectively, of BancoKentucky, had concealed and misrepresented the relations between BancoKentucky and Caldwell & Co. for the fraudulent purpose of inducing him to exchance his stock in the Mechanics' Bank for stock in BancoKentucky; that the relations between Banco-Kentucky and Caldwell & Co. were the cause of the collapse of BancoKentucky resulting in rendering its stock worthless, which he had received in turn for his stock in the Mechanics' Bank, which was very valuable. Because of the alleged fraud, he asked that the transaction and said exchange of stock be adjudged void, and that he be restored his stock in the Mechanics' Bank, and the parties placed in status quo.

Weil joined as local defendants in his action the Mechanics' Bank and its officers, W. J. Pierce, president, and Eugene E. Bell, cashier, and, for his cause of action against these local defendants, he alleged that his stock in the Mechanics' Bank had not been transferred on the books to BancoKentucky, and that, unless enjoined and restrained by the court, the local defendants would complete the transaction by transferring plaintiffs' stock on the books of the Mechanics' Bank to BancoKentucky.

Immediately after the filing of the suit in the McCracken circuit court, sunmmons was issued to Jefferson county for BancoKentucky, which was served on it on November 25, 1930, and at the same time a notice was served on BancoKentucky that on November 29th a motion for a temporary injunction would be made in McCracken circuit court. Counsel for Banco-

Kentucky appeared at that hearing and made a special appearance protesting against the jurisdiction of the McCracken circuit court, and moved the court to quash the serving of the summons on BancoKentucky in Jefferson county. Its special plea to the jurisdiction of the court was as follows:

"Comes the defendant, The BancoKentucky Company, and enters its special appearance herein for the sole purpose of denying this Court's jurisdiction over it in this action and moves the Court to quash the service of the summons and notice upon it made in Jefferson County, Kentucky, on November 25, 1930, because:

" '1. This defendant's chief office and principal place of business in Kentucky is now and has been continuously since before the institution of this action in Jefferson County, Kentucky. It has had no office or place of business and has transacted no business at any time in McCracken County, Kentucky, and all its officers have at all of said times resided in said Jefferson County, Kentucky.

" '2. The alleged cause of action set up in the petition against this defendant is improperly joined with the alleged cause or causes of action set up against the other defendants herein and said other defendants are not proper or necessary parties to the determination of the alleged cause of action set up against this defendant and they are not affected by and have no real interest in the determination of the alleged rights of the plaintiffs set up against this defendant.' "

The court overruled the motion and plea to the jurisdiction of the court, and by subsequent pleadings the issues were made and the proof taken, and the court entered judgment granting appellees the relief sought. Hence this appeal.

It is the contention of the appellant, BancoKentucky, that this action is controlled by section 72 of the Civil Code of Practice, and that the Jefferson circuit court only was the proper venue of the action, and that the Mechanics' Bank and its officers were unnecessary parties to the action and were joined therein as local defendants in an attempt to give the McCracken circuit court jurisdiction.

It is the contention of Weil that the contract had not been performed and could not be performed without the transfer on the books of his stock in the Mechanics' Bank, and that the local (McCracken county) defendants were necessary parties to the action to forestall the consummation of the contract.

Section 72 of the Civil Code of Practice is cumulative to section 71, and the two sections must be read together. The latter part of section 71 provides:

"* * * Or, if it [action] arises out of a transaction *with an agent of such corporation, it may be brought in the county in which such transaction took place.*"

The latter part of section 72 provides:

"* * * Or, if it be upon a contract, in the above-named county, *or in the county in which the contract is made or to be performed.* * * * (Our Italics.)

Weil relies upon the quoted provisions of the Civil Code of Practice, supra, and contends that the contract was to be finally consummated in McCracken county.

The questions to be determined are: (a) Whether or not the contract for the sale or exchange of stock had been consummated, or whether it was only in process of consummation, and whether the transfer upon the books of Weil's stock in the Mechanics' Bank was necessary to complete the contract; and (b) the county in which the contract was made and performed, or, if not performed, where to be performed.

(a) Sections 545 and 546, Kentucky Statutes, prescribes how shares of stock may be transferred on the books of a corporation, but the statute is only for the protection of the company. A contract of sale of stock in a corporation passes the right to the vendor, and the vendee may compel the transfer upon the records of the company by a proper showing. Citizens' Bank of Shelbyville v. Mutual Trust & Deposit Co., 206 Ky. 86, 266 S. W. 875, 40 A. L. R. 1001, and cases therein cited; Bank of America v. McNeil, 10 Bush, 54; Kenton Ins. Co. v. Bowman, 84 Ky. 430, 1 S. W. 717, 8 Ky. Law Rep. 467. In Thurber v. Crump, 86 Ky. 408, 6 S. W. 145, 10 Ky. Law Rep. 59, it is held that transfer of stock is valid, not only between the parties, but as against credi-

tors, although not entered upon the books of the company; the provisions of the statute required the transfer to be made on the books of the company being for the protection of the corporation and purchasers, and not creditors. See, also, to the same effect, American Wire-Nail Co. v. Bayless, 91 Ky. 94, 15 S. W. 10, 12 Ky. Law Rep. 694; Citizens' Bank v. Mutual Trust & Deposit Co., 206 Ky. 86, 266 S. W. 875.

It has been held, however, that where the vendors of stock held it until paid for, the transaction is not a completed sale. Albany Mill Co. v. Huff Bros., 72 S. W. 820, 24 Ky. Law Rep. 2037.

In the case at bar the terms and conditions of the trade had been finally agreed upon between the parties and each party delivered to the other the stock certificates, and it is immaterial whether the stock was transferred on the books. Under the above authorities, the conclusion is inescapable that a transfer on the books of the stock certificates was unnecessary to the completion of the contract. The meeting of the minds of the parties and the exchange of the stock certificates finally consummated the contract between the parties, and the contract was complete.

(b) There is no evidence conducing to show that the contract was made or performed in McCracken county, but, to the contrary, all negotiations leading up to the consummation of the contract and the exchange and delivery of stock certificates were made and had in Jefferson county.

If BancoKentucky had remained solvent and continued to do business and had demanded a transfer on the books of the Mechanics' Bank of Weil's stock, it would have become the duty of the Mechanics' Bank to make such transfer, and, in the event of its refusal to do so, BancoKentucky could have compelled it to make such transfer by proper proceedings, and in such action Weil would not have been a necessary party, for reasons stated above, that the trade was complete between him and BancoKentucky, and the transfer of the stock certificates was only a matter between the banks. Weil does not allege that the Mechanics' Bank or its officers had anything to do with the trade between him and BancoKentucky. The only relief he asks against

the local defendants is that they be enjoined from transferring the stock on its books, which was immaterial to obtain the relief sought.

In Willis v. Tomes et al., 141 Ky. 431, 132 S. W. 1043, J. S. Willis, a citizen of McLean county, sued H. C. Willis, also a resident of that county, to recover for a breach of a contract to make certain cross-ties, and joined as defendants James Lowe and J. J. Tomes, who lived in Edmondson county. The only allegation attempting to state a cause of action against Tomes was to the effect that he came upon the land of the plaintiff and ordered the defendant H. C. Willis to stop making ties, and that H. C. Willis, at his orders, stopped and refused to make the ties. Summons was served on Tomes in another county. None of the defendants appeared, and a default judgment was entered against them all. An exception issued and was levied on Tomes' land in Grayson county. He brought suit to enjoin the execution, alleging that the judgment was void, because he was served in Edmondson county in a suit to which he had been improperly joined as a defendant. On an appeal to this court, it was held that the judgment was void, because venue could not be created in McLean county by misjoinder of parties or causes. It was held that Tomes not being a party to the contract and that the cause of action alleged against H. C. Willis, local defendant, affected him alone and was an entirely different cause of action from that attempted to be set out against Tomes who was a nonresident of the county, and that Tomes was improperly joined.

In the Willis-Tomes Case, supra, Tomes was charged with invading the rights of the plaintiff J. S. Willis, in that he induced H. C. Willis, the local defendant, to breach his contract with the plaintiff; yet, it was held that he was improperly joined in the action with his codefendant for the breach of the contract.

In the case at bar, there is no contention that the local defendants were parties to the alleged fraud practiced upon Weil by BancoKentucky, or that they had any connection with the trade whatever. In our view, the Willis-Tomes Case, supra, is a much stronger one in favor of the venue than is the case at bar.

The transfer or nontransfer of the stock certificates had nothing to do with the rights of ownership as be-

tween Weil and BancoKentucky, or of their rights involved in the question of rescission. The thing in dispute was not the stock certificates, but the property which they represented, title to which had already vested in the respective parties upon the delivery and exchange of the stock certificates which were a symbol or paper evidence of ownership. Burchett v. Louisa Light and Power Co., 235 Ky. 296, 31 S. W. (2d) 373.

In Commonwealth for use v. James, Auditor, 138 Ky. 472, 128 S. W. 338, 339, one Bryant was in a dispute with other parties about their respective patents in Whitley county. Bryant claimed that the patent of her adversaries was void for fraud practiced upon the commonwealth in securing it, and she sought to have it annulled. She joined in her suit, as a party defendant, the state auditor, and sought to enjoin him from entering upon his record the challenged patent, and filed her suit in the Franklin circuit court, and the auditor was summoned in Franklin county, where none of the other defendants resided, and she sought to bring them in the jurisdiction of the Franklin circuit court. In holding that the Franklin circuit court was not the proper venue of the action, we said:

"If it should be conceded, further, that this suit was intended for the last-named purpose, then it is a transitory action to which only the respective claimants are necessary or proper parties. We cannot perceive that the Auditor of State, because he is the custodian of the public records affecting land grants, is a proper party to an action to vacate a grant obtained not by his fraud, any more than the clerk of the county court would be in a suit to annul a deed obtained by fraud. The record is required to be kept, and it must disclose truthfully all that is required to be recorded therein. If a party has obtained false evidence upon which the record is predicated, the course is not to compel the public custodian to mutilate or alter his record.

"The Auditor not being a proper party to the action, his special demurrer to the petition was properly sustained. And as he was not a proper party, the action being transitory, the Franklin circuit court had not jurisdiction of the other parties, none of whom resided in or were served in

Franklin county. The circuit court so adjudged, and the judgment is affirmed.''

We think the auditor occupied the same position in the case, supra, as the local (McCracken county) defendants occupy in the case at bar.

In Meguiar v. Rudy, 7 Bush, 432, it is said:

"The privilege of being sued in the county of his residence, or in the county in which the summons is served on a defendant, can not be taken away from him by joining with him in the suit a defendant who may be served with the summons in the county in which the suit is brought, unless a cause of action is shown by the pleadings and proof to have existed against such defendant, or a joint cause of action against both.''

Appellee cites and relies on Bell v. Duncan, 196 Ky. 574, 245 S. W. 141, and University of Louisville et al. v. Metcalfe, 216 Ky. 339, 287 S. W. 945, 49 A. L. R. 375, in which cases it is held that a cause of action was stated against the local defendants. In the case of Webb v. Southern Trust Co., 227 Ky. 79, 11 S. W. (2d) 988, the contract was executed in the county of the local defendant. In Dye Bros. v. Butler, 209 Ky. 199, 272 S. W. 426; Torrent Lodge No. 711, F. & A. M. v. National Surety Co. et al., 231 Ky. 302, 21 S. W. (2d) 439, and Ocean Acc. & Guarantee Ins. Co. v. Milford Bank, 236 Ky. 457, 33 S. W. (2d) 312, the contracts sued on were to be performed in the county of the local defendant.

The cases, supra, relied on by appellee, are not applicable to the facts in the case at bar, for reasons above stated, that the contract between Weil and Banco-Kentucky was made and performed in Jefferson county.

Having concluded that the local (McCracken county) defendants were not necessary parties to the action for a rescission of the contract, and improperly joined, it follows that the Jefferson circuit court was the proper venue for the action, and the court erred in failing to sustain BancoKentucky's motion to quash the service of summons on it in Jefferson county. It becomes unnecessary to discuss other questions raised, all of which are reserved.

For reasons indicated, the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole court sitting, except Richardson, **J.**