## Kentucky Title Trust Co. v. Weil et al.
Dec. 1, 1939.

764

David R. Castleman, Sr., and David R. Castleman, Jr., for appellant.

James G. Wheeler and Ernest Woodward for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

On November 24, 1930, Jesse Weil and wife, Vivien Weil, instituted an action in the McCracken Circuit Court against BancoKentucky, which will be hereinafter referred to as Banco, wherein they sought a rescission on the ground of fraud of a contract they had entered into with Banco relative to the exchange by the Weils of 528 shares of the capital stock of the Mechanics' Trust and Savings Bank of Paducah, which will be hereinafter referred to as the Mechanics Trust, for 4,252 shares of Banco stock.

Certain officers of the Mechanics Trust, who were residents of McCracken County, were joined as nominal defendants so they might be enjoined from transferring the 528 shares of stock in their bank to Banco. The issues were made up in that action by appropriate pleadings, considerable proof was taken, and upon the case being submitted to the chancellor, he rendered a judgment rescinding the contract. The case was brought to this court on appeal and the judgment of the McCracken Circuit Court was reversed solely on the ground that it did not have jurisdiction of the action, because the officers of the Mechanics Trust who were residents of McCracken County, were not necessary parties to the action and the Jefferson Circuit Court was the proper venue for that action. See BancoKentucky Company v.

Weil, 258 Ky. 243, 79 S. W. (2d) 977, wherein the opinion was handed down March 5, 1935.

On October 25, 1935, this action was instituted in the Jefferson Circuit Court by the Weils, with leave of court, filing their intervening petition against the receiver of Banco in the action of A. J. Carroll, et al. v. Chemical Bank & Trust Company et al., wherein they sought the same relief against the receiver that they had sought against Banco in the McCracken Circuit Court, to-wit: a rescission on the ground of fraud of the contract for the exchange of stock. After the pleadings were made up, it was stipulated that the case should be submitted to a chancellor of the Jefferson Circuit Court upon the depositions taken in the action in the McCracken Circuit Court. The chancellor found that a fraud had been perpetrated upon the Weils by James B. Brown, President of Banco, in the exchange of stock in the two institutions, and a judgment was entered rescinding the contract. The receiver is attacking the chancellor's judgment on this appeal because: 1. Misjoinder of parties plaintiff; 2. Plaintiffs knew all the facts which they claim were fraudulently misrepresented to them, therefore, they could not have been defrauded; 3. Plaintiffs' action is barred by limitation; 4. If not so barred, then the plaintiffs' laches preclude recovery; 5. The chancellor erred in overruling appellant's objections to incompetent evidence introduced by appellees.

The facts in this case are the same as those occurring in the opinion of BancoKentucky Company v. Weil, supra, and it is unnecessary to again narrate them here. We will proceed to discuss the errors assigned in the order named.

The record shows that Mrs. Weil owned 443 shares, and her husband 80 shares of the stock of the Mechanics Trust, and as they were not joint owners of this stock, appellant contends they could not prosecute this action jointly under Section 24 of the Civil Code of Practice, and that under Section 83 of the Code there was a misjoinder of parties plaintiff as Mrs. Weil's action does not affect that of her husband. However, appellant does not stress this point in its brief, evidently realizing that no prejudice could have resulted to it from this misjoinder since Mrs. Weil did not testify. While 443 shares of Mechanics Trust stock was purchased in her name by

her husband, Mrs. Weil knew nothing about that transaction and nothing about the deal he made with Banco. Had separate actions been brought by Mrs. Weil and her husband, they would have been heard together on the motion of any party to the action, or upon the motion of the court. Sections 134 and 756 of the Civil Code of Practice provide a judgment shall not be reversed except for an error prejudicial to the substantial right of the party complaining thereof; and Section 338 of the Code provides: "No exceptions shall be regarded, unless the decision to which it relates be prejudicial to the substantial rights of the party excepting."

No possible harm could have resulted from this misjoinder, therefore, on the authority of the sections of the Code above mentioned, and the many cases cited in the notes thereunder, we will disregard it.

We find ourselves unable to agree with appellant that there is no clear and convincing evidence that Brown perpetrated a fraud upon Weil. The record shows that from the start of negotiations with Brown concerning the exchange of this stock, Weil did not think well of the contemplated merger with Caldwell & Company unless there was an exhaustive audit made showing its true condition. The fact that Weil was interested in heading the insurance department of the merged institutions and approved of the merger if the audit showed Caldwell & Company to be in good condition, does not contradict his statement that he would not have gone through with his trade of stock with Banco if he had known it was merging with Caldwell & Company without such an audit. Weil testified that Brown told him before the newspapers announced a merger on June 2nd, that there would be no merger until a complete audit had been made of Caldwell & Company, and that practically every time he saw Brown after this newspaper announcement, Brown reassured him that no merger would be consummated until after the audit was made showing Caldwell & Company to be in good condition.

Appellant insists that after Weil read the newspaper announcement of June 2nd, he should have attempted to learn through sources other than Brown whether or not the merger actually had been consummated. But what other source could Weil have con-

sidered so authoritative or so reliable as the President of Banco, who was personally handling the merger with Caldwell & Company? Weil testified that he relied upon Brown's assurances made after the newspaper announcements on June 2nd, that there would be no merger until after the audit, and that he interpreted the newspaper announcement on June 2nd, when considered with Brown's assurances, to mean that Brown had an option to consummate this merger, after the audit of Caldwell & Company showed it to be in good financial condition. Where a man in Brown's position made a newspaper announcement that there had been a merger between Caldwell & Company and Banco and then assured Weil that no such merger would actually be consummated until after an audit was made, we are of the opinion Weil had the right to rely upon the private statements made to him by Brown and to put the interpretation he did on the newspaper announcement. Following the stock market crash of 1929, many financiers in high places were giving out optimistic statements in 1930 to the press and then qualifying such statements in private conversation with their business associates. The fact that Weil and members of his family were carrying 10,000 shares of Banco at that time in addition to the 4,200 shares he was acquiring by this deal, and the fact that at that time Brown stood on the very pinnacle of his fame as a financier in Kentucky, are quite convincing that Weil relied upon Brown's statements that there would be no merger without an audit, and that there was no lack of ordinary diligence on Weil's part in accepting such statements from Brown even in the face of the press announcement on June 2nd. Weil testified that it was unheard of that any financier of Brown's experience would enter into a merger of such size without an audit, and we are inclined to agree with Weil in this statement.

Weil and Brown contradict each other as to what Brown said relative to the audit. Also, Brown contradicts Milton S. Trost, who testified that soon after the press carried the story of the merger he interviewed Brown concerning the audit and Brown informed him that it was being made but that it had not been completed at that time. But we are in accord with the holdings of the two chancellors who heard this same evidence

in trying the two cases below, that there is an abundance of evidence that Brown made such false statements to Weil concerning this audit with intention that Weil should act thereon; and that Weil did rely and act upon such statements, resulting in his great damage.

Appellant pleads this action is barred by limitation as provided in Kentucky Statutes, Section 2515, the pertinent part of which reads: "An action for relief on the ground of fraud or mistake * * * shall be commenced within five years next after the cause of action accrued."

Section 2519 provides that: "In actions for relief for fraud or mistake * * * the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake * * *."

This court has interpreted Section 2519, Kentucky Statutes, as meaning that the five year limitation begins to run when the fraud is discovered, or when it could have been discovered by the exercise of ordinary diligence on the part of the one defrauded, Jordan v. Howard, 246 Ky. 142, 45 S. W. (2d) 613, and cases cited therein. It will be recalled that Caldwell & Company failed on November 5, 1930, and the National Bank of Kentucky failed to open November 17th, and on November 24th, Banco was in the hands of a receiver. Appellant contends that Weil by the exercise of ordinary diligence should have discovered the alleged fraud perpetrated upon him by Brown between the time it was publicly announced June 2nd, that there had been a merger between Caldwell & Company and Banco, and September 19th, when Banco by a resolution of its board finally consummated the deal with Weil. As stated above, we do not know of any source more authoritative that Brown wherein Weil could have obtained this information, therefore, he was justified in relying upon Brown's word. This being our conclusion, we are unable to say that Weil did not exercise ordinary diligence in failing to discover this fraud at an earlier date. It is immaterial whether we determine the fraud could have been discovered by the use of ordinary care on the part of Weil on the date Caldwell & Company closed, November 5th, or on the date the National Bank of Kentucky closed, November 17th, or the date Banco went into receivership, November 24th, as this action was in-

stituted October 25th, 1935, which is within five years from any and all of the above mentioned dates, hence it is not barred by limitation.

Nor was Weil guilty of laches. He instituted the suit in the McCracken Circuit Court very soon after the National Bank of Kentucky was closed and on the same day that Banco was forced into the hands of a receiver. This shows he acted with great promptness. That action was brought in the wrong venue as decided by this court on March 5, 1935, and we know that opinion could not become final until thirty days after it was handed down; therefore, Weil delayed from April 4, 1935, to October 25th, of that year, something less than seven months, after it was finally determined his first suit was brought in the wrong venue. But laches is something more than delay; it is such delay that works to the detriment of another. It may be said that laches is negligent delay on the part of one by which another is caused to change his position to his detriment respecting the matter in controversy so that it would be inequitable to permit the one guilty of such negligence to enforce his right against another whom his negligence has misled. So long as there has been no change of position, it is of little importance whether one acts promptly in prosecuting his action within the limit fixed by law. It is only where his lack of diligence injures another that equity will stay his dilatory hand. McKenney v. Page, 146 Ky. 682, 143 S. W. 382; Culton v. Asher, 149 Ky. 659, 149 S. W. 946. Weil's delay in bringing this action did not cause Banco to change its position or damage it in any manner, therefore laches will not preclude Weil from prosecuting this action.

Appellant argues that Weil should not be allowed to prosecute this action after Banco had become bankrupt and gone into receivership, citing Reid v. Owensboro Sav. Bank & Trust Company, 141 Ky. 444, 132 S. W. 1026; and Medley v. Johnson, 200 Ky. 689, 255 S. W. 532. It is true in these cases the court refused to rescind stock purchasing contracts, but the reason was not that a contract for the purchase of stock in a corporation cannot be rescinded for fraud after the corporation has become insolvent, but rescission was denied because the plaintiffs were guilty of laches. In the Reid case the court quoted from Kentucky Mutual Investment Com-

pany's Assignee v. Schaefer, 120 Ky. 227, 85 S. W. 1098, wherein it was held that where the subscriber of stock is not guilty of laches the insolvency of the corporation will not prevent a rescission of the contract for fraud.

We agree with appellant that the evidence Weil brought out as to statements made by Brown, Jones and ZurSchmiede several weeks after the deal between Brown and Weil was consummated on September 19th, 1930, to the effect there had been no merger with Caldwell & Company is incompetent. The reason such evidence is incompetent is, as contended by appellant, it relates to statements made long after the transaction had been consummated and could not possibly have influenced Weil in entering into it. Pulliam v. Gentry, 206 Ky. 763, 268 S. W. 557, and 12 R. C. L. 435, Section 182, hold that where fraud is charged, evidence of similar fraud perpetrated at or about the same time may be introduced not to show that misrepresentations were made to plaintiff, but to show there was a motive and intent to profit by a fraudulent scheme. Weil brought out such evidence in an attempt to show that on divers previous occasions Brown had represented to him there had been no merger between Caldwell & Company and Banco, and such evidence was incompetent as is pointed out in the Pulliam case and the text, supra. But excluding all incompetent evidence, there is left sufficient competent evidence which clearly and convincingly proves Brown perpetrated a fraud upon Weil by representing to him that there would be no merger with Caldwell & Company until an audit was completed showing that company to be in good shape, when at that time the merger had already been consummated as Brown knew.

Judgment affirmed.