## Keck, Commissioner of Highways, v. Browne et al.

June 23, 1950.

Rehearing denied December 8, 1950.

Chester D. Adams, Judge.

152

A. E. Funk, Attorney General, M. B. Holifield, Assistant Attorney General, Jo M. Ferguson, Assistant Attorney General, and C. J. Waddill, Assistant Attorney General for appellant.

Elwood Rosenbaum, Clay & Rosenbaum, John L. Davis, Stoll, Keenon & Park for appellees.

JUDGE LATIMER—Affirming.

This action was instituted to determine which of three parties should bear the loss for a forgery. Ben Browne, one of the appellees herein, who resides at 461 Woodland Avenue, Lexington, is a civil engineer. He was employed by the Highway Department to do some surveying and work in Greenup County. Prior to the contract of employment, the record discloses that correspondence relative to same was carried on between him and the Department of Highways. This correspondence from the Highway Department to Browne was addressed to Browne at his residence, 461 Woodland Avenue, and received by him. The contract, which was entered into pursuant to the above correspondence, does not contain the address of Browne. Mr. Browne entered upon the performance of his contract. In payment for

same the Commonwealth drew a check in his favor in the sum of $3,949.92, which was mailed to him accompanied with an enclosure showing the purpose for which the check was drawn, and addressed to appellee at Lexington with no street address given. Somehow the Post Office Department delivered the letter and check to another Ben Brown whose address was 561 McKinley Street, Lexington. This second Ben Brown endorsed and presented the check to a merchant named Grall, to whom he was indebted, in order that he might pay Grall what he owed him and receive the difference in cash. Grall informed the imposter, Brown, that he could not cash a check in that amount but that they would go to the First National Bank and Trust Company and get it cashed. Whereupon, Grall accompanied Brown to the Bank. They presented the check to Theodore Skidmore, a "savings and extra teller." Skidmore did not know Brown but requested the merchant, Grall, whom he did know, to identify Brown, which he did. It seems that about this time, Mr. Miles, vice-president of the Bank, was passing Skidmore's cage when Skidmore called Mr. Miles attention to the presented check. Mr. Miles knew Mr. Grall as a customer of their Bank. He asked Mr. Grall if he knew this man, Brown. Mr. Grall told Mr. Miles that he did, and that he did business with him and had for some time. Whereupon, Mr. Miles put his initials on the check and Mr. Skidmore then cashed it. Brown took the money and has not as yet been found. The Bank then sent the check through regular collection channels and the amount thereof was deducted from the Commonwealth account in the Bank. When the forgery was discovered the check was returned through the Bank channels for collection but the appellee Bank has ever since refused to pay it.

The Bank and the proper Mr. Browne insist that, because of failure properly to address the letter to the right Mr. Browne, the Commonwealth should sustain the loss. The Commonwealth insists that because of the failure of Browne to put his proper address in the contract, that either he or the Bank, which the Commonwealth alleges failed to exercise due diligence in identifying the forger, Brown, before making payment, should sustain the loss.

As stated above, this action was brought to determine which of three parties, namely, the drawer, payee,

or the cashing Bank should bear the loss for the forgery. Proof was taken by deposition, and the cause submitted. The court adjudged that Ben Browne recover of the Commonwealth the amount of the check; that the action against the Bank be dismissed; and that as between the Bank and the Commonwealth, the Commonwealth should sustain the loss. From that judgment and declaration of rights, the Commonwealth appeals.

Appellants insist (1) that the rule of "comparative innocence" would place the loss on either the payee or the Bank and not on the Commonwealth; (2) that the statute provides that a forged endorsement is wholly inoperative; and (3) that the general rule is operative in favor of the Commonwealth unless the latter is estopped. It is maintained under (3) above that the rule admits of no true exceptions; that the courts do not look with favor on estoppel as against the sovereign; that the elements of estoppel were not present in this case; and that the burden of proof to establish estoppel was on the Bank.

Appellee Bank and Trust Company relies entirely on the well established rule that where one of two innocent persons must suffer by the act or conduct of a third party, the loss must be borne by the one whose conduct made it possible.

We recognize the correctness of the arguments concerning the provisions of the statute and the decisions thereunder relative to a forged instrument, and the questions of estoppel as set out in the opinion cited by appellants. The principles and rules embraced therein do not govern here and are not controlling in the instant set of facts and circumstances. Relative to the questions of estoppel as being operative against the Commonwealth, we need only call attention to what appears to be the universal rule, that where the Government elects to become a party to commercial paper, it assumes all the responsibilities of private persons under the same circumstances. Let us observe what was said in United States v. First National Bank & Trust Co., D.C., 17 F.Supp. 611, 613. There the Veterans Administration addressed a bonus certificate to one William M. Hutchins and, by mistake of the Postal Department, the letter containing the certificate was received by William M. Hutchinson, who made application

for a loan thereon. Check was issued and negotiated through the First National Bank and Trust Company. It was argued there that there could be no estoppel as against the United States. It was said: "The rule is well settled that the government, in dealing with commercial paper, would have the same rights as individuals engaged in similar transactions."

In Clearfield Trust Company v. United States, 318 U.S. 363, 63 S.Ct. 573, 576, 87 L.Ed. 838, it was said: "The fact that the drawee is the United States and the laches those of its employees are not material. Cooke v. United States, 91 U.S. 389, 398, 23 L.Ed. 237. The United States as drawee of commercial paper stands in no different light than any other drawee. As stated in United States v. National Exchange Bank, 270 U.S. 527, 534, 46 S.Ct. 388, 389, 70 L.Ed. 717, 'The United States does business on business terms.' It is not excepted from the general rules governing the rights and duties of drawees 'by the largeness of its dealings and its having to employ agents to do what if done by a principal in person would leave no room for doubt.' "

In United States v. National Exchange Bank, 4 Cir., 1 F.2d 888, 890, it was said: "It is enough that, when the United States elects to become a party to commercial paper, it assumes all the responsibilities of private persons under these same circumstances."

Appellants say in brief: "In the court below, all parties conceded the existence of the general rule that, where one of two innocent persons must suffer by the acts of a third, he whose conduct enabled such third person to occasion the loss, must sustain it." Appellants do not complain about the rule but insist that its application to the facts of this case causes the difficulty. This general rule is so well established that it is entirely unnecessary to enter into a lengthy discussion thereof. See Anglo-American Mills Co. v. Kentucky Bank & Trust Co., 243 Ky. 124, 47 S.W.2d 951; Citizens' Bank of Shelbyville v. Mutual Trust & Deposit Co., 206 Ky. 86, 266 S.W. 875, 40 A.L.R. 1001; and Bailey v. Hoover, 233 Ky. 681, 26 S.W.2d 522. Since appellants insist that the difficulty is the application of the rule to the facts herein, let us look again at the facts. Considerable ado is made about the fact that in the contract itself no address was given of appellee, Browne. How-

ever, it is admitted that in some of the Highway Department files there was a correct address, but that its files were kept in sections and not in a central filing system, which possibly accounts for following the line of lesser resistance and addressing the envelope merely to Lexington, Kentucky. In the first place, the imposter had to obtain possession of the check before he could forge it. Who made this possible? Is it not obvious that it was the failure of appellants properly to address the envelope containing the check?

In the case of Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S.W.2d 60, 63, considering rights as between a paying bank and the maker of a check, a situation somewhat like this, in which two Joe Cunningham's were involved, it was said: "Under the first part of the quoted section of our statutes, which is in harmony with the general rule prevailing even before the adoption of the statute, one who pays a check under a forged indorsement must, as between himself and drawer, bear the loss; but the latter part of the section is consonant with a well-recognized exception to the general rule which places the loss upon the drawer where his own acts and conduct invited and made possible the forgery. The exception to the general rule springs from the just and equitable principle recognized in all jurisdictions that, where one of two innocent parties must bear a loss, it must be borne by the one whose conduct made it possible.

"Here Mr. Terrell had in his hands a fund due one Joe Cunningham which by order of court he had been directed to pay. He made the check out in the name of the party entitled thereto, but by mistake mailed it to another bearing that name and in care of the firm by which the latter was employed. Thus he made it possible for the imposter, by whose ruse he had been misled, to exhibit the envelope in which the check was mailed and to hold himself out as the true owner and holder of the check and to be so identified by an officer of a well-known business establishment. No matter what the real intentions of the drawer were, he in effect represented to the commercial world that the party into whose hands he placed the check was the true payee, and by his own conduct led others to believe and act upon that representation to their prejudice."

Thus, we see that appellants made it possible for the wrong Ben Brown to get the check in his possession. Under the circumstances here, it appears to us that the Bank did all reasonably to be expected in cashing the check. This is just another case of two innocent parties. We think the facts in the Terrell case above fit substantially into the facts here; that the reasoning therein is the reasoning that should be adopted here; and that the general rule, that if one of two innocent parties must bear a loss, it must be borne by the one whose conduct made it possible, must prevail.

The judgment is affirmed.