CASE 16—PETITION EQUITY—JANUARY 15.

# American Wire-Nail Co. v. Bayless, &c.

### APPEAL FROM KENTON CHANCERY COURT.

1. CORPORATIONS—FRAUDULENT ISSUE OF STOCK.—An issue of stock by a corporation which is not beyond the amount authorized by its charter, but which is brought about by the fraud of the beneficiary, is not *ultra vires*, and neither the corporation nor a stockholder will be allowed to claim that it is void as against a *bona fide* holder; and where the alleged fraud consisted in misrepresentations of the original corporators as to the amount they had paid in, the fact that the subsequent purchaser of the stock alleged to be fraudulent was a director of the corporation when he purchased is not sufficient to charge him with notice of the infirmity in the stock, as he was merely the nominal holder of one share of stock in order that the company might have the requisite number of directors, and was not an active participant in the management of the affairs of the corporation. Nor is the fact that he is the brother-in-law of the beneficiary of the alleged fraudulent issue of stock and purchased the stock upon advantageous terms

American Wire and Nail Co. v. Bayless, &c.

sufficient to charge him with notice. The conduct of the parties in this case, however, is inconsistent with the idea that there was any fraud.

2. SAME.—If a corporation, or one of its stockholders, claims that an issue of stock is fraudulent, steps must be taken at once to annul it. If there is an unreasonable delay, and the parties can not be placed *in statu quo*, a court of equity will not interfere.

3. SALE OF STOCK—RIGHT TO COMPEL CORPORATION TO MAKE TRANSFER.—A contract of sale of stock in a corporation passes the rights of the vendor, and the vendee may, by proper action, compel a transfer upon the books of the corporation. The transfer upon the company's books is merely to protect the company and others who may propose to purchase the stock.

4. A PARTY CAN NOT TESTIFY FOR HIMSELF IN CHIEF AFTER TAKING OTHER TESTIMONY FOR HIMSELF IN CHIEF, and where the answer of one of two defendants operates for both, the defendant not answering can not testify in chief for his co-defendant after the latter has taken other testimony for himself in chief, as the witness would be really testifying for himself, although nominally for his co-defendant.

5. FAILURE TO DEMUR—COSTS.—Although a defendant does not demur to the petition, the court has a right, upon the final hearing, to decide that no cause of action is presented; and if it does so, it should not be at the cost of the successful party. Section 93 of the Civil Code, which provides that the failure of a party to make objection by demurrer before he pleads further shall render him liable for the costs resulting from such failure, applies only where the party himself subsequently seeks to avail himself of the right to demur.

6. IF THE RESULT REACHED BY THE LOWER COURT BE CORRECT, THE JUDGMENT WILL BE AFFIRMED without regard to the ground upon which the case was decided.

COLLINS & FENLEY FOR APPELLANT.

1. When the incapacity to sue appears in the petition, a failure to object by demurrer is a waiver of the objection which might have been made. (Petty v. Malier, 14 B. M., 200; Johnson's Heirs v. Chandler's Heirs, 15 B. M., 584; Hardee, Son & Co. v. Hall & Long, 12 Bush. 327; Warfield v. Gardner's Adm'r, 79 Ky., 583; McAllister's Adm'r v. Savings Bank, 80 Ky, 687.)

2. As to those who did not file a general demurrer, the right to make the objection was waived, and the objection by the court, *sua sponte*, was not proper. (Cason v. Cason, 79 Ky., 558; Barton v. Barton, &c., 80 Ky., 212; Posey v. Green, 78 Ky., 162; Turnpike Co. v. Stewart, 2 Met., 121; Drake's Adm'r v. Semonin & Dixon, 82 Ky., 291.)

3. The court erred in sustaining a demurrer raised, *sua sponte*, upon the submission of the case for trial upon the pleadings and proof without requiring the payment of costs. (Civil Code, sec. 93.)

4. The corporation is the proper party to make the defense. (Cov. & Lex. R. Co. v. Bowler's Heirs, &c., 9 Bush, 480; Shawhan, &c., v. Zinn, &c., 79 Ky., 304; Jones v. Johnson, &c., 10 Bush, 660; Cin., N. O. & T. P. R'y Co. v. Third Nat. Bank, 1 Ohio Cir. Ct., 199; T., C. & C. T. P. Co. v. Lancaster, 79 Ky., 552.)

5. Bayless was "a *mala fide* purchaser" of encumbered property, and if the stock may be canceled in the hands of the original holder, it may be canceled in his hands. (Cotton v. Hart, 1 Mar., 15; Doyle v. Armstrong, 2 Duv., 536; Edward v. Morris, 2 Mar , 67; Summers v. Taylor, 80 Ky., 429; Irvin v. Thompson, 4 Bibb, 295; Mason v. Baker, 1 Mar., 209.)

6. It was error to raise a question by demurrer not made by any one, hold it well taken, and dismiss the whole proceeding without giving the right to amend. (Civil Code, sec. 134; Williams v. Gordon, 11 Bush, 695; Greer v. City of Covington, 83 Ky.; 410.)

7. The court should have sustained exceptions to Mecklenborg's deposition, because it was taken in his own behalf after other witnesses had testified for him. (Civil Code, sec. 606.)

8. Unless Bayless was an innocent purchaser for a valuable consideration, and had paid all the purchase money, the transfer sought by this action should not be decreed, the issue of the stock being void as between the company which represents all the stockholders, and the parties to whom the stock was issued.

9. Laches is no defense to secret fraud, and it will be considered only from the discovery of the fraud. (Brown County v. Buena Vista, 95 U. S., 157; Preston v. Preston, 95 U. S., 200; Meader v. Morton, 11 Wall., 442.)

10. If the court should find the purchase valid, then the amount Bayless owes Stephens should be adjudged to appellant. (Thurber v. Crump, 86 Ky., 419.)

W. H. MACKOY FOR APPELLEE, BAYLESS.

1. The corporation itself has no right of action. If any one has the right to complain it is B. H. and L. H. Gedge.

2. Bayless was an innocent purchaser of the eighty-nine shares of the stock in controversy for value, and without notice of the matters charged by appellant in its answer and cross-petition.

3. All the stock of appellant issued to Stephens and Mecklenborg was properly issued to them, and in accordance with the terms of the agreement under which B. H. and L. H. Gedge became stockholders.

4. If any stock was improperly issued to Stephens or Mecklenborg, it does not appear that the eighty-nine shares of stock purchased by Bayless was improperly issued.

5. If there was any thing improper in the increase of stock up to and including January 14, 1884, the evidence shows that all the stockholders

American Wire–Nail Co. v. Bayless, &c.

acquiesced in the increase. The rule is well settled in such cases that the entire cause of complaint is barred if all the stockholders acquiesce in the transaction. (Morawetz on Corporations, sec. 262; Cov. St. R'y Co. v. Shinkle, Trustee, MS. Op., Feb. 17, 1881.)

6. B. H. and L. H. Gedge, with full knowledge, have ratified their subscription to the stock of appellant, and can not now complain. (Morawetz on Corporations, sec. 810; Cook on Stock and Stockholders, secs, 160-162.)

7. Bayless is entitled to have the stock transferred to him upon the books of appellant. (Bank of America v. McNeill, 10 Bush, 54; Lowell on Transfer of Stock, sec. 95; Bank v. Lanier, 11 Wall., 369; Johnston, Receiver, v. Laflin, 103 U. S., 800; Pratt, Ex'r, v. Taunton Copper Man'f'g Co., 123 Mass., 110; Ross v. Southwestern R. Co., 53 Ga., 515; New York, &c., R. Co. v. Schuyler, 34 N. Y., 30; Commercial Bank of Buffalo v. Kortright, 22 Ward, 348; McNeill v. Tenth Nat. Bank, 46 N. Y., 325, Leitch v. Wells, 48 N. Y., 585; Holbrook v. New York Zinc Co., 57 N. Y., 616; Cook on Stock and Stockholders, sec. 416.)

8. If appellant ever had a claim to relief, it has lost it by its acquiescence and laches. (Chubbs v. Upton, 95 U. S., 665; Upton v. Tribilcock, 91 U. S., 64; Ogilvie v. Knox Ins. Co., 22 How., 380; Marsh v. Keating, 2 Clark & F., 250; Dumphy v. Travelers' Newspaper Asso., 146 Mass., 495; Dimpfell v. Railway Co., 110 U. S., 209; Allen v. Wilson, 28 Fed. Rep., 677; Burt v. Association, 3 De Gex & Jones, 158; Forbes v. Railway Co., 1 Small & G., 142; Graham v. Railway Co., 2 McN. & G.. 146; Peabody v. Flint, 6 Allen, 52; Bank v. R. Co., 125 Mass., 490; Gibson v. Moore, 7 B. M., 95; Buford v. Brown, 6 B. M., 553; Haggins v. Bucroft, 1 Dana, 29; Stewart v. Dougherty, 3 Dana, 480; Brant v. Ehlen, 59 Md., 25; Nicol's Case, 3 De Gex & Jones, 387.)

J. F. & C. H. FISK FOR APPELLEE, STEPHENS.

1. If there was any fraud practiced, it was against the Gedges individually, and not against the corporation. Therefore, the appellant has no cause of action.

2. Any stockholder in a corporation may transfer his interest in any way which would operate as a transfer at common law, regardless of the rules of the company, and yet the transfer will be valid, and a court of equity will compel the company to make the transfer upon its books. (Wait's Actions and Defenses, vol. 4, p. 164; Alvord v. Smith, 5 Pick., 232; Fox v. Clifton, 6 Bing., 776; 9 Bing., 115; Cutting v. Damerel, 88 N. Y., 410; Robinson v. National Bank of New Berne, 95 N. Y., 637; Johnson v. Laflin, 103 U. S., 800; Lowell on Transfer of Stock, p. 101; Morawetz on Private Corporations, secs. 326, 328-330; Parrott v. Byers, 40 Cal., 614; Black v. Zacharie, 3

Vol. 91—7

How., 513; Webster v. Upton, Assignee, 91 U. S., 65; Bank v. Lanier, 11 Wall., 377.)

3. Had a call been made upon the stock the Gedges would have been compelled to pay the call, and would not be heard in defense upon any of the grounds relied upon by them in this case. (Upton, Assignee, v. Tribilcock, 91 U. S., 45; Sanger v. Upton, Assignee, 91 U. S., 56; Cower v. Upton, Assignee, 91 U. S., 64.)

4. Parties to the transactions can not avail themselves of the use of the name of the company to obtain a hearing of objections as to which, individually, they would have no standing in a court of justice.

.  The Gedges, by their acquiescence, have waived their right to complain, either in their own names or in the name of the corporation. (Dimpfell v. O. & M. R. Co., 110 U. S., 210.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, D. B. Bayless, brought this action, on September 3, 1885, to compel the appellant, the American Wire-Nail Company, to transfer to him upon its books eighty-nine shares of its capital stock, of the par value of one hundred dollars each, purchased by him of the appellee, J. L. Stephens, on July 30, 1885, and evidenced by two certificates, one for forty-four shares, dated November 7, 1883, and the other for forty-five shares, dated January 14, 1884. The company, although proper demand for the transfer was made, resisted upon the ground of a fraudulent issue of stock to Stephens, and that Bayless was not an innocent purchaser. It also made its answer a cross-petition against Stephens and the appellee, Mecklenborg, claiming judgment against them for the alleged fraudulent stock issued to them, and that the judgment it might obtain against Stephens be liquidated *pro tanto* by a cancellation of the stock improperly obtained by him according to its face value.

The appellant corporation was created in 1875; the corporators appear not to have been numerous; the

authorized capital stock was one hundred thousand dollars, of which nearly fourteen thousand dollars was subscribed and paid. The original investment by Stephens was five thousand three hundred dollars, and by Mecklenborg two thousand two hundred dollars, or seven thousand five hundred dollars by both. They, however, purchased and retired other stock until they became, in 1882, the owners of all the original stock, holding it in proportion to their original investment. In the meantime they gave their attention to the business in order to render it profitable and place it upon a sure footing. Additions were made to the plant, and in the spring of 1882 the company had a profitable business. At this time B. H. Gedge proposed to take ten thousand dollars of stock in it, if, upon inquiry, he became satisfied to do so. He was afforded access to the books of the company, and, at least to some extent, examined them. He then became a stockholder. In a short time thereafter his brother, L. H. Gedge, also became one. He also had opportunity to inform himself as to the condition of the company. It is claimed that when they entered the company Stephens and Mecklenborg were guilty of misrepresentation and fraud, which resulted in the issue of fraudulent stock to them. Right here the parties differ widely in their versions of what occurred.

It is maintained by the Gedges that Stephens and Mecklenborg represented to them that they had paid into the concern thirty thousand dollars, or that the company had that much paid-up capital; that the subscription of B. H. Gedge would increase it to forty

thousand, and that of L. H. Gedge to fifty thousand dollars; that each corporator was to have stock according to the cash paid in by him, and that to carry out this deceit Stephens and Mecklenborg made entries, or had them made, in the new set of books then opened, purporting to show that they had thirty thousand dollars in cash in the business. These entries, which are exhibited, show the original investments of five thousand three hundred dollars by Stephens and two thousand two hundred dollars by Mecklenborg; also an indebtedness, under the heading of "Sundries," by the corporation to Stephens of twelve thousand one hundred dollars, to Mecklenborg of nine thousand four hundred dollars, and to Stephens' wife of one thousand dollars. These various sums amount to exactly thirty thousand dollars, and stock was issued to Stephens and Mecklenborg upon this basis, and not merely upon their original cash investment, as is claimed should have been done. It is contended upon the other side, however, that they merely represented to the Gedges they had a business worth thirty thousand dollars, and if they (the Gedges) became stockholders a new set of books must be opened, the new stock taken upon the basis that Stephens and Mecklenborg had thirty thousand dollars in the business; stock should be issued accordingly, and that the entries in the books were made merely to show this state of case.

The direct evidence upon this issue between the parties is very conflicting. Resort may, therefore, well be had to the conduct of the parties to the transaction and all the attending circumstances. Thus tested, we

think the appellant has failed to sustain its position. Stock was issued upon the capital as increased by the coming in of the Gedges upon the basis that Stephens and Mecklenborg had thirty thousand dollars in the business, one of them being then the president of the company and the other its secretary.

In 1883 the two Gedges and Stephens bought out Mecklenborg, and divided his stock, amounting to eleven thousand six hundred dollars, in certain proportions between them. B. H. Gedge had become a director in the company soon after coming into it in 1882. In August or September, 1883, he became its book-keeper, and, in November following, its secretary. The stock certificates which were issued upon the division of the Mecklenborg stock were attested by him as secretary, and the certificate for the forty-four shares thus obtained by Stephens and then issued to him is one of the two that were assigned to the appellee, Bayless. The other was subsequently issued to Stephens for profits coming to him from, and not drawn out of, the corporation in money, but taken in stock; and this certificate is also attested by B. H. Gedge as secretary.

The issual of this stock was not, as to the corporation, *ultra vires*. It was not an issue of stock beyond that authorized by its charter. It is only claimed that it was a fraudulent issue brought about by the fraud of the beneficiary. This being so, if the appellee, Bayless, be an innocent holder, he is in law protected, even if the stock was issued through fraud, because it does not lie in the mouth of a corporation, after issuing stock, to say to a *bona fide* holder that it is void.

Public policy forbids it. Bayless had no actual notice of any infirmity in the stock. It is said, however, that he is, in law, chargeable with notice under the circumstances. It is true he was a director of the company from October 8, 1883, to January 1, 1885, but he was scarcely more than nominally so. He was the nominal holder of one share of stock in order that the company might have the requisite number of directors. He never attended but two meetings of its board of directors, and at one of these one of the certificates of stock assigned to him was issued, and at the other the other one. The circumstances attending their issue were certainly calculated to cause him to believe that they were not fraudulent. The fact that he is the brother-in-law of Stephens, and purchased the stock upon advantageous terms, is not sufficient to charge him with notice of any fraud connected with the issue of it. He appears to us to occupy the attitude of a *bona fide* holder for value. If, however, Stephens was, in fact, entitled to the stock, if there was no fraud connected with it, then the question whether Bayless was an innocent holder does not arise.

The Gedges had an opportunity, when they became stockholders, to examine into the condition of the company's business. One of them, soon after he became a stockholder, was made a director. He afterward became the book-keeper, and then the secretary of the company. Both of them united in the purchase of the Mecklenborg stock, and the evidence shows that they have sold the stock thus gotten, or a part of it, since they say they discovered

the issue was fraudulent.   B. H. Gedges took addi-
tional stock in 1884, and their mother also took stock
in the company in the early part of 1884, and after
they claim to have discovered the fraud.   The record
also shows that they knew Stephens had sold por-
tions of his stock to various parties, and had, for a
considerable time before the sale to Bayless, been try-
ing to sell all of it.    In fact, some of it he had
pledged to the company and some of it to one of the
Gedges to secure debts owing by him, and yet the
claim is made, when Bayless asks a transfer of the
stock to himself, that there was a fraudulent issue
of stock in 1882 to Stephens and Mecklenborg.   The
acts and conduct of the Gedges strongly support the
view contended for by the other side.   Their conduct
is consistent only with the idea that the Stephens
stock is valid.

Under section 606 of the Civid Code the deposition
of Mecklenborg was not competent.   The depositions
of others, not parties to the action, had already been
taken in chief.   True, it was taken for Stephens, but
the witness was also really testifying for himself.   He
was a party to the action, and interested in the result.
The issue made by the answer of Stephens was for
both, because it was of such an inseparable character
that the answer operated for each of them.    Disre-
garding the testimony of this witness, however, the
evidence still preponderates in favor of the appellees.

It matters not upon what ground the lower court
decided the case.   If the result there reached be cor-
rect, the judgment will be affirmed.

Complaint is made that, although Mecklenborg did,

yet Stephens did not demur to the answer and cross-petition, and that the court, after the case had been fully prepared, *sua sponte* raised a demurrer to the pleading, and dismissed it upon the ground that it presented no defense to the action, and authorized no relief against Stephens and Mecklenborg. If a defendant does not demur to a petition, certainly the court has a right, upon the final hearing, to decide that no cause of action is presented. If it does so, it should not be at the cost of the successful party, because he may have preferred to not object to the pleading, but go to a trial upon the merits. Section 93 of the Civil Code provides that a failure of a party to object to a pleading by demurrer is not a waiver thereof, but a failure to thus make his objection before he pleads further renders him liable for the costs resulting from such failure. This means where he subsequently seeks to avail himself of the right to demur. The court, in this instance, therefore, did not err in allowing the appellees their cost.

The defense is, that the stock was fraudulently issued. The appellant proceeded upon this ground. It sought relief against Stephens and Mecklenborg for this reason. If it was not fraudulently issued, then, upon its own statement, it was not entitled to any relief against either of them. Their positions were identical. The answer of Stephens puts every thing as to both of them in issue. It operated like a plea of payment would for his co-defendant, Mecklenborg, who did not answer.

Not only does the evidence sustain the view asserted by the appellees, but the conduct of the appellant is

not calculated to call forth the activity of a court of equity in its behalf.    To do so, good faith and diligence must be shown.    A court of equity applies the doctrine of laches according to its own ideas of justice and right.    Every case is controlled by its own circumstances.    They address themselves to the sound discretion of the court.    It always discountenances neglect, and certainly where it operates to injure innocent parties.    It is a rule founded in experience and sound public policy.    Here the parties can not be placed in *statu quo*.    The company has not only by delay, but by positive action, ratified the issue of the stock.    It has accepted some of it as collateral.    It has held it out to the world as valid ; and if it were, in fact, not so, yet the appellant and the Gedges have unreasonably delayed saying so or taking steps to annul it.    It is transferable by delivery of the certificates so as to pass all the rights of the assignor, and is protected in the hands of an innocent holder, whatever may be its infirmity.    Hence, every reason exists for prompt action if the corporation or a stockholder claims it is invalid.    A transfer upon the company's books is merely to protect the company and others who might propose to purchase the stock, as the contract of sale passes the rights of the vendor, and the vendee may, by proper action, compel the transfer upon the records of the company.    (Wait's Actions and Defenses, vol. 4, page 164, and vol. 8, page 79 ; Johnston v. Laflin, 103 U. S., 800 ; Morawetz on Private Corporations, secs. 326 *et seq*.)

In view, therefore, of the laches of the appellant, its silence and conduct as to this stock until this suit

was brought, were we in doubt upon the evidence as to the right of the case, the inclination would be to the side of the appellees.

The judgment is affirmed.