**Stephen L. CHERRY, Appellant,**

**v.**

**Frank AUGUSTUS, Sheriff of McCracken County, Kentucky, and McCracken County Deputy Sheriff Merit Board, Appellees.**

**and**

**Frank Augustus, Sheriff of McCracken County, Kentucky, Cross–Appellant,**

**v.**

**Stephen L. Cherry and McCracken County Deputy Sheriff Merit Board, Cross–Appellees.**

Nos. 2004–CA–001496–MR, 2004–CA–001730–MR.

Court of Appeals of Kentucky.

July 7, 2006.

Discretionary Review Denied by Supreme Court March 12, 2008.

Len W. Ogden, Jr., Paducah, KY, for appellant and cross-appellee Stephen L. Cherry.

Mark D. Pierce, Paducah, KY, for appellee and cross-appellant Frank Augustus, Sheriff of McCracken County, Kentucky.

Before BARBER and MINTON, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

MINTON, Judge.

This opinion concerns an appeal and cross-appeal from a circuit court action to enforce an order of the McCracken County Deputy Sheriff Merit Board ("the Board"), which called for Stephen L. Cherry to be reinstated as deputy sheriff with full back pay retroactive to his termination date. The circuit court's final judgment and order mandated Cherry's reinstatement under the Board's order and awarded him $7,710.79 in back pay, plus court costs.

1. Senior Judge sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Cherry contends on appeal that he was entitled to more back pay, more damages, attorney's fees, and post-judgment interest. Frank Augustus, Sheriff of McCracken County, Kentucky, cross-appeals, arguing essentially that the circuit court should have dismissed the case from the outset.

Finding that no error or abuse of discretion occurred, we affirm on the appeal and cross-appeal.

## I. HISTORY.

### A. Cherry's Termination.

After receiving a citizen's complaint regarding Deputy Cherry, Sheriff Augustus suspended him, with pay, in May 1995 pending the results of an internal investigation. The investigation revealed numerous acts of misconduct allegedly committed by Cherry between November 1994 and June 1995: lack of courtesy, profanity, two charges of insubordination, and three charges of use of excessive or unnecessary force. After notifying Cherry of the charges and the specific details of each alleged incident, Sheriff Augustus discharged Cherry on June 5, 1995.

### B. Administrative Proceedings.

Following Cherry's request, the Board conducted an evidentiary hearing at which Cherry was represented by counsel. The resulting Board order stated that "the evidence introduced at the hearing was insufficient to support the disciplinary action and the dismissal of Deputy Cherry by Sheriff Augustus[.]" Further, the order commanded Sheriff Augustus to "immediately reinstate Stephen L. Cherry to his former position of deputy sheriff of McCracken County with full [back pay], all retroactive to June 5, 1995."

### C. Judicial Review of the Board's Order.

Sheriff Augustus then appealed the Board's order in the circuit court. Cherry later filed a cross-appeal. On April 18, 1997, the circuit court set aside the Board's order and reinstated Cherry's termination on the grounds that the Board's enabling legislation, KRS 70.260 through 70.273, was unconstitutionally vague, overly broad, and in violation of the Kentucky Constitution. For our purposes, we will refer to this circuit court appeal, *Frank Augustus, Sheriff of McCracken County, Kentucky v. Stephen L. Cherry and McCracken County Deputy Sheriff Merit Board*, as *Augustus*.

Cherry filed a timely appeal of the circuit court's order. A panel of this Court issued an opinion on January 29, 1999, which vacated the circuit court's judgment of April 18, 1997, for lack of jurisdiction and remanded the case for reinstatement of the Board's order of September 12, 1995.[2] We held that Sheriff Augustus never triggered the subject matter jurisdiction of the circuit court because he filed an appeal rather than a complaint in an original action seeking judicial review of an administrative order as is required by KRS 23A.010(4).

The Kentucky Supreme Court granted discretionary review of *Augustus*.[3] Because the vote of the six participating justices was equally divided, the Supreme Court affirmed this Court's opinion under Supreme Court Rule 1.020(1)(a). In February 2001, the circuit court entered an order reinstating the Board's order; but Sheriff Augustus continued to deny Cherry reinstatement or back pay.

---

**2.** Case No. 1997–CA–001297–MR.

**3.** Case No. 1999–SC–000142–DG.

### C. Present Action to Enforce Board's Order.

On April 2, 2001, Cherry instituted a separate action in the circuit court to enforce the Board's order. This enforcement action is the case now before us.

Cherry and Sheriff Augustus both filed motions for a judgment on the pleadings or, in the alternative, summary judgment. The circuit court granted judgment on the pleadings in Cherry's favor on the issues of his entitlement to restitution and to an unspecified amount of back pay. The order left numerous other issues in the case unresolved. The circuit court denied Sheriff Augustus's motion for reconsideration of the judgment on the pleadings and findings of fact. The court also denied Cherry's motion seeking punitive damages and attorney's fees. Cherry then filed a motion for leave to file an amended complaint, which added claims for loss of opportunity to pursue his chosen career in law enforcement and punitive damages.

Ultimately, the circuit court entered its final judgment and order, which incorporated and finalized the earlier judgment on the pleadings and the order denying Cherry's claims for punitive damages and attorney's fees. The circuit court denied Cherry's motions for reconsideration of the earlier order and for leave to amend the complaint. The circuit court ordered that Cherry receive $7,710.79 in back pay and be reinstated under the Board's order; but it denied Cherry any other relief, except taxable costs.

Cherry appealed to this Court naming Sheriff Augustus and the Board as appellees. Sheriff Augustus cross-appealed naming Cherry and the Board as cross-appellees.

### II. ISSUES ON CHERRY'S APPEAL.

Cherry asserts that the circuit court committed the following errors: (1) awarding him only nominal damages for a violation of his constitutional rights, (2) applying the doctrine of mitigation of damages to his award of back pay, (3) denying him attorney's fees, (4) denying him damages for the lost opportunity to engage in his chosen profession of law enforcement, (5) denying his claim for punitive damages, (6) denying his motion to amend the final judgment and order to include post-judgment interest, and (7) denying his motion to expunge his personnel file of any reference to his being terminated for misconduct.

### III. ISSUES ON SHERIFF AUGUSTUS'S CROSS-APPEAL.

Sheriff Augustus asserts that the circuit court committed the following errors: (1) failing to find that Cherry's enforcement action is barred by the statute of limitations, (2) failing to dismiss Cherry's enforcement action as barred by laches, (3) applying the doctrine of mitigation of damages to Cherry's back pay award on an annual basis rather than an aggregate basis, and (4) refusing to consider a number of his claims in the enforcement action on the on the grounds of res judicata. Specifically, Sheriff Augustus raises before us the following claims, which the circuit court deemed barred by res judicata: (a) the Board was unconstitutionally biased, (b) the Board exceeded its statutory powers, (c) the Board's decision was arbitrary because its order contained no findings of fact, (d) the Board's decision was arbitrary because it was not supported by substantial evidence, (e) reinstating Cherry would violate KRS 61.300(4) because he has been convicted of a crime of moral turpitude barring him from serving, (f) the back pay award violates Section 3 of the Kentucky Constitution that allegedly prohibits Cherry from receiving compensation for any

period of time he did not actually work, and (g) the doctrines of official immunity and governmental immunity preclude any back pay award for Cherry.

## IV. ANALYSIS OF ISSUES RAISED ON CROSS–APPEAL.

We address first the issues raised by Sheriff Augustus on cross-appeal because several of these issues are potentially dispositive of Cherry's direct appeal.

### A. Statute of Limitations.

█ Sheriff Augustus asserts that Cherry's action to enforce the Board's order is barred because it falls outside the five-year statute of limitations. No specific statute of limitations is provided by the statutes creating the Board. KRS 413.120(2) sets forth a default five-year limitations period for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." This statute has been applied to actions to enforce the order of an administrative agency where the enabling legislation does not specify any other limitations period.[4] So we agree with Sheriff Augustus that the five-year limitations period in KRS 413.120(2) applies to this enforcement action.

Cherry filed this enforcement action on April 2, 2001, over five and a half years after the Board's order was issued. But he asserts that the action is not time-barred because the running of the limitations period was tolled from September 22, 1995, when Sheriff Augustus filed his abortive appeal of the Board's order in *Augustus*, until August 24, 2000, when the Supreme Court affirmed our opinion vacating the circuit court's order. Because *Augustus* was ultimately vacated for lack of jurisdiction, Sheriff Augustus argues that its filing could have no effect on the running of the limitations period.

█ The statutes creating the Board do not say what effect a pending motion for judicial review has on a final order of the Board. But, "[i]n the absence of a statute providing otherwise, the institution of proceedings to review an order of an administrative agency does not operate as a stay of further proceedings before the agency, and the grant of a stay rests in the sound discretion of the reviewing court."[5] We find this general rule applicable to any proceedings to review an order of the Board. So we hold that the filing of *Augustus* did not automatically toll the running of the statute of limitations. And Sheriff Augustus never sought a stay to prevent the immediate enforcement of the Board's order.[6]

█ The running of the statute of limitations for the enforcement action was tolled temporarily, however, by the circuit court's order in *Augustus*, which set aside the Board's order on constitutional grounds. The circuit court's order had the effect of rendering the Board's order a nullity. So, from April 18, 1997, when the circuit court's order was entered, until January 29, 1999,[7] when we vacated the

---

4. *See Whittaker v. Brock*, 80 S.W.3d 428, 431 (Ky.2002) (holding that KRS 413.120(2) is applicable to an action to enforce an award of workers' compensation benefits.).

5. 73A C.J.S. *Public Administrative Law and Procedure* § 344 (2005).

6. However, during the litigation of *Augustus*, Cherry filed a motion for a temporary injunc-

tion seeking to be reinstated immediately and allowed to participate in certain law enforcement training pending the outcome of the case. The circuit court granted this temporary injunction, but Cherry was actually never reinstated.

7. We need not decide exactly when the limitations period began running again. Even using the earliest possible time—when this

circuit court's order, there was no valid order of the Board that Cherry could have enforced. The fact that the circuit court's order was ultimately vacated for lack of jurisdiction does not change the effect that the order had at the time it was entered. When we exclude this period of over twenty-one months, it is clear that Cherry filed the enforcement action within the five-year limitations period.

## B. Laches.

Sheriff Augustus alternatively asserts that Cherry's claims for reinstatement and back pay are barred by the doctrine of laches. In support, he cites *Newland v. City of Richmond*[8] in which a federal district court in Kentucky held that a former police chief's claim for reinstatement and back salary, which were first raised more than four years after he was terminated, were barred by the doctrine of laches. The court stated that "[t]he public interest requires that a public officer who has been wrongfully removed from office exercise a special diligence in seeking restoration. The doctrine of laches must be strictly applied against him." [9]

■■■■ Even if we assume that *Newland* accurately describes the law of Kentucky, we do not find Cherry's claims for restitution and back pay to be barred by laches. The doctrine of laches prohibits claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action.[10] As an equitable doctrine, its application is directed to the court's discretion

based on the unique circumstances of the case.[11]

While he might not have filed this enforcement action at the first available opportunity, Cherry did not delay four years before seeking restitution and back pay unlike the plaintiff in *Newland*. Cherry was awarded the right to back pay and reinstatement by the Board in 1995, and he has pursued those remedies at every stage of these protracted proceedings. We fail to see how Sheriff Augustus was prejudiced since the delay in Cherry's being reinstated and receiving back pay is attributable to Sheriff Augustus's recalcitrance, not to Cherry's slackness. We find no abuse of discretion in the circuit court's conclusion that Cherry's enforcement action was not barred by the doctrine of laches.

## C. Claims Barred by Res Judicata.

■■■■ As noted above, the circuit court refused to consider the merits of a number of Sheriff Augustus's claims in the enforcement action on the grounds that they were collateral attacks on the Board's order and barred by res judicata. Sheriff Augustus now seeks to have this Court address each claim on its merits. But we agree with the circuit court's application of res judicata to these claims, specifically, the doctrine of claim preclusion.

■■■■ Sheriff Augustus seeks to avoid the effect of issue preclusion or claim preclusion by pointing out that there was no resolution on the merits of any of these claims because *Augustus* was ultimately decided on jurisdictional grounds. But

Court vacated the circuit court's order—Cherry's enforcement action is not time-barred.

8. 293 F.Supp. 862 (E.D.Ky.1968).

9. *Id.* at 863.

10. *Plaza Condominium Association, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996).

11. *American Wire–Nail Co. v. Bayless*, 91 Ky. 94, 15 S.W. 10, 12 (1891); 45C AM.JUR.2D *Job Discrimination* § 1968 (2002).

claim preclusion does not require a resolution on the merits. Rather, the relevant question is whether these claims should have been raised in an earlier proceeding.

Sheriff Augustus also seeks to justify his various attempts at collateral attack of the Board's order by relying on *Department of Conservation v. Sowders*[12] in which Kentucky's highest court held that collateral attack was permissible to raise a constitutional error in an administrative agency's decision.

But *Sowders* is distinguishable from the instant case. First, *Sowders* involved a facial constitutional error. And by his own admission, Sheriff Augustus has abandoned any facial constitutional challenges. Second, under the law existing when *Sowders* was decided, there was no possibility for judicial review of the administrative agency's decision. But the version of KRS 70.273(4) in place in 1995 grants the right to judicial review of the Board's decision.

 Sheriff Augustus argues that he had no effective right of judicial review because his attempt to seek judicial review of the Board's order in *Augustus* was ultimately vacated for lack of jurisdiction. But this argument ignores the existence of our saving statute, KRS 413.270. KRS 413.270(1) grants a party who mistakenly, but in good faith, filed an action in a Kentucky court, which lacks jurisdiction over the action, ninety days from the date of the judgment dismissing the action in which to file a new action in the proper court. Moreover, under KRS 413.270(1), "[t]he time between the commencement of the first and last action shall not be counted in applying any statute of limitation." And KRS 413.270(1) applies to original actions seeking judicial review of a final order of an administrative agency.[13] When an appeal is taken from the order or judgment determining that there is no jurisdiction, the ninety days begins to run upon the final ruling of the appellate court that ultimately determines the disputed issue of jurisdiction.[14]

So, based on the saving statute, Sheriff Augustus had ninety days from the Supreme Court's August 4, 2000, opinion affirming our dismissal of *Augustus* during which to file an original action seeking judicial review of the Board's order; but he did not do so. Accordingly, he may not now collaterally attack the Board's decision in this enforcement action on the grounds that he had no avenue of judicial review.

In sum, because we find that the doctrine of claim preclusion bars any claims which Sheriff Augustus could have raised earlier in an original action seeking judicial review of the Board's order, we must analyze each of the claims the trial court refused to consider on the merits to see if Sheriff Augustus should have raised that claim in an earlier action. We have examined the factual basis for each of the claims raised by Sheriff Augustus that the circuit court deemed barred by res judicata. We find that in every instance, Sheriff Augustus knew, or should have known, of the underlying facts in time to pursue the claim in a timely petition for judicial review of the Board's order. Thus, Sheriff Augustus is barred by the doctrine of claim preclusion from raising them in the instant enforcement action.

---

**12.** 244 S.W.2d 464 (Ky.1951).

**13.** *See Jent v. Commonwealth, Natural Resources and Environmental Protection Cabinet,* 862 S.W.2d 318, 320–321 (Ky.1993).

**14.** *See Ockerman v. Wise,* 274 S.W.2d 385, 388 (Ky.1955).

### D. Mitigation of Damages Calculated on Annual Basis.

Sheriff Augustus asserts that the circuit court applied the doctrine of mitigation of damages incorrectly to Cherry's back pay award by calculating it on an annual basis rather than an aggregate basis. Evidence was presented to the circuit court showing that Cherry earned the following wages from 1995 through 2001:

| | |
|---|---|
| 1995 | $21,842 |
| 1996 | $36,992 |
| 1997 | $39,824 |
| 1998 | $59,860 |
| 1999 | $59,221 |
| 2000 | $61,328 |
| 2001 | $66,636 |

Conflicting evidence was also presented regarding how much Cherry would have earned in 1995 if he had continued to be employed as a deputy sheriff. The circuit court made no specific findings of fact regarding how much money Cherry would have earned each year from 1995 through 2001 if he had continued to be employed as a deputy sheriff, nor how much money Cherry actually earned each year from 1995 through 2001. But the circuit court found that Cherry earned $7,710.79 less in 1995 than he would have earned if he had continued to be employed as a deputy sheriff. The court also found that in each following year through 2001 Cherry earned more in his alternate employment than he would have if he had remained a deputy sheriff. Based on the doctrine of mitigation of damages, the circuit court found that Cherry was entitled to only $7,710.79 in back pay.

Sheriff Augustus agrees that the doctrine of mitigation of damages was applicable to the back pay award, but he argues that the circuit court erred in considering the wages on an annual basis rather than in the aggregate. And he asserts that the court should have looked at the total wages Cherry earned from 1995 and compared this to the total wages that he would have earned during the same time period if he had continued as a deputy sheriff. Sheriff Augustus asserts that if the circuit court had applied the doctrine of mitigation of damages in the aggregate rather than year-by-year, it would have found that Cherry earned more in his alternate employment than he could have earned as a deputy sheriff. So, Sheriff Augustus contends, the court would have awarded Cherry no money for back pay because he suffered no damages.

For purposes of this argument, we accept as true Sheriff Augustus's assertion that if the circuit court had calculated Cherry's wages on an aggregate basis rather than an annual basis when applying the doctrine of mitigation of damages, Cherry would have not have been entitled to receive any money for back pay. But we disagree with Sheriff Augustus's assertion that the circuit court's method of calculating mitigation of damages was arbitrary and contrary to the precedent in Kentucky.

There are no published cases involving an award of back pay by any board established under KRS 70.260 through KRS 70.273. In those cases where Kentucky's highest court has applied the doctrine of mitigation of damages to an award of back pay, the Court has stated simply that the plaintiff "cannot recover more than the difference between the contract wages or salary and the amount he earned or could have earned with reasonable diligence." [15]

Whether this calculation should be made on an aggregate basis or on a periodic basis is an issue of first impression in Kentucky but is not unprecedented in oth-

---

**15.** *Louisville & N.R. Co. v. Wells,* 289 Ky. 700, 160 S.W.2d 16, 18–19 (1942); *see also Commonwealth v. Ratliff,* 497 S.W.2d 435, 436 (Ky.1973).

er jurisdictions. Under a year-by-year approach, as applied by the circuit court in the instant case, if "a plaintiff's interim earnings in any year exceed the wages he or she lost due to the discrimination, that 'excess' must not be deducted from any back pay for other years to which the plaintiff is entitled." [16]

In *NLRB v. Seven–Up Bottling Co. of Miami*,[17] the United States Supreme Court affirmed the decision of the National Labor Relations Board (NLRB) to calculate mitigation of damages on a quarterly basis. The Court noted that the NLRB had adopted the quarterly rule because, in cases where the employee eventually obtained a better-paying job than the one from which he was discharged, "it became profitable for the employer to delay an offer of reinstatement as long as possible, since every day the employee put in on the better paying job reduced back pay liability." [18] Based on this theory that calculating mitigation of damages on an aggregate basis provides employers a perverse disincentive to reinstatement where the discharged employee has obtained a better-paying job, other courts have also adopted various periodic approaches to calculating mitigation of damages.[19]

 Mitigation of damages is necessary to make sure that the injured party does not receive a windfall.[20] Neither the merit board statutes nor Kentucky's common law provides specifically how the doctrine of mitigation of damages is to be calculated when determining back pay for a discharged deputy sheriff reinstated by the Board. So long as the method of calculation chosen by the circuit court serves the goals of the merit board statutes and equity and is not arbitrary, we hold that the precise method chosen is within the court's discretion. So we find no abuse of discretion in the circuit court's method of calculating mitigation of damages on a year-by-year basis.

## V. ANALYSIS OF ISSUES RAISED ON DIRECT APPEAL.

### A. Nominal Damages.

Cherry asserts that the circuit court erred by awarding him only "nominal damages" in the sum of $7,710.79. He asserts that this violates the prohibition against absolute and arbitrary power contained in the Kentucky Constitution, Sections 2 and 14.

 " 'Nominal damages' are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." [21] We doubt that an

---

**16.** *Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 693 (8th Cir.1983).

**17.** 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953).

**18.** *Id.* at 347, 73 S.Ct. 287.

**19.** *See, e.g., Hartman v. Duffey,* 8 F.Supp.2d 1, 6 (D.D.C.1998) (stating that "[b]ecause timely reinstatement is an important remedy under Title VII, periodic mitigation is the preferred method for determining back pay liability in discrimination cases[ ]" and affirming year-by-year approach); *Darnell v. City of Jasper, Alabama,* 730 F.2d 653, 656–657 (11th Cir. 1984) (holding that district court erred in

calculating mitigation of damages on an aggregate basis rather than a quarterly basis in Title VII case); *Leftwich,* 702 F.2d at 693 (holding that district court erred by not calculating mitigation of damages on a year-by-year basis in a Title VII case); *Dyer v. Hinky Dinky, Inc.,* 710 F.2d 1348, 1350–1352 (8th Cir.1983) (adopting a pay-period-by-pay-period approach to mitigation of damages in a Vietnam Era Veterans' Readjustment Assistance Act case).

**20.** *See Wells,* 160 S.W.2d at 18–19.

**21.** *Stoll Oil Refining Co. v. Pierce,* 343 S.W.2d 810, 811 (Ky.1961) quoting Restatement of the Law, *Torts,* Section 907.

award of $7,710.79 could be characterized as "trivial." [22] But even if it could, the circuit court did not award the $7,710.79 as nominal damages but, rather, as back pay. As noted above, the amount of the award was based on Cherry's actual lost wages in 1995 after offsetting the wages he earned in his alternate employment that year. Thus, we reject Cherry's nominal damages claim.

## B. Applicability of Mitigation of Damages.

Cherry asserts that the circuit court erred in applying the doctrine of mitigation of damages to his back pay award. The circuit court indicated that it applied the doctrine of mitigation of damages because it was "constrained by existing case law[,]" especially *Commonwealth v. Ratliff*,[23] to do so. In *Ratliff*, Kentucky's highest court offset the back pay award of a wrongly-discharged employee of the Department of Highways with his wages earned since termination, stating that Kentucky "is committed to the doctrine of mitigation of damages in employment contract cases[.]" [24]

Cherry asserts that the instant case is distinguishable from *Ratliff* because that case concerned a terminated employee of the Department of Highways,[25] which involves different statutory provisions and protections than those applicable to a terminated deputy sheriff. But the Court's holding in *Ratliff*, "that this state is committed to the doctrine of mitigation of damages in employment contract cases," was not based on any statutory language.[26] In *Ratliff*, the Court described the doctrine of mitigation of damages as "long-accepted." [27] This suggests that the reason the Court did not more thoroughly explain the basis of its holding is that it deemed the issue to be well-settled in Kentucky. For whatever reason, the holding in *Ratliff* is written in very broad, positive language, which does not suggest that it is meant to be interpreted narrowly, applicable only to cases arising under employment by the Department of Highways. We see nothing in the instant case to distinguish it from the rule announced in *Ratliff*. So we hold that the circuit court properly applied the doctrine of mitigation in the case at hand based on the authority of *Ratliff*.

Cherry concedes that he would have received a significant windfall if the doctrine of mitigation of damages had not been applied by the circuit court. But he asserts that applying the doctrine in the instant case rendered his compensatory damages inadequate to make him whole. He complains that his reinstatement and modest back pay award were achieved "at a personal financial cost in excess of $50,000.00 [in legal fees] and after [his] being excluded from law enforcement for almost 10 years." He asserts that these facts, and Sheriff Augustus's allegedly wrongful conduct since the termination of Cherry, distinguish the case from *Ratliff*.

As for Sheriff Augustus's conduct after termination, this might be relevant if this

---

22. *See*, e.g., *Stoll Oil Refining Co.*, 343 S.W.2d at 811 (holding, in 1961, that $1,500.00 is not trivial.).

23. 497 S.W.2d at 435.

24. *Id*. at 436.

25. *Id*.

26. *But see, id*. at 436 n. 1 (observing that KRS 18.275, "[although] enacted subsequent to the original judgment, clearly expresses the long-accepted doctrine of mitigation of damages.").

27. *Id*.

were a *tort case;* but it is *not.* This is an action to enforce the order of an administrative board. We fail to see how Sheriff Augustus's post-termination conduct has any bearing on Cherry's back pay award, which was entered under the Board's order that Cherry receive full back pay retroactive to his termination. As for attorney's fees, Cherry has addressed this issue separately in his appeal. His claim to attorney's fees must succeed or fail on its own merits. Cherry is not somehow entitled to more back pay to compensate for the circuit court's denial of his claim for attorney's fees. The same is true with regard to his claim for the lost opportunity to pursue his career in law enforcement. Thus, we find no merit to Cherry's claims that the trial court erred by applying the doctrine of mitigation of damages to limit his back pay award.

### C. Attorney's Fees.

 Cherry faults the circuit court for failing to award him attorney's fees. But, "[a]s a general rule, in the absence of contractual or statutory liability, [attorney's] fees are not recoverable as an item of damages[ ]" under Kentucky law.[28] We find no provision in the merit board statutes providing for attorney's fees, nor is there a possible contractual basis for attorney's fees in this instance.

 Cherry claims that he is entitled to attorney's fees based on quantum meruit. Quantum meruit is an equitable doctrine granting one "who has rendered services in a quasi-contractual relationship" the reasonable value of services rendered.[29] The elements of a claim for quantum meruit are as follows:

1. that valuable services were rendered, or materials furnished;
2. to the person from whom recovery is sought;
3. which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and
4. under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person.[30]

 Cherry's quantum meruit claim is based on the fact that the version KRS 70.273(4) in force in 1995 provided that "the county attorney shall represent the board before the court[ ]" on a petition for judicial review of the Board's order. But the county attorney initially represented Sheriff Augustus in *Augustus.* Cherry reasons that his private attorney advanced the interests of the Board and also served the county attorney by fulfilling the county attorney's obligation to represent the Board. Since the Board, the county attorney, and the . Sheriff are all agents or agencies of the county, Cherry reasons that Sheriff Augustus owes him attorney's fees based on the doctrine of quantum meruit. But we do not agree that Cherry or his attorney provided any service to Sheriff Augustus; that any services were accepted by Sheriff Augustus, the Board, or the county; or that the circumstances were such that Sheriff Augustus, the Board, or the county was on notice that Cherry expected to be repaid for the services of his private attorney. So Cherry's claim for attorney's fees based on quantum meruit fails because he has failed to prove

---

28. *Lyon v. Whitsell,* 245 S.W.2d 926 (Ky. 1952). *See also, CSX Transportation, Inc. v. First National Bank of Grayson,* 14 S.W.3d 563, 569 (Ky.App.1999).

29. BLACK'S LAW DICTIONARY (8th ed.2004).

30. 66 AM.JUR.2D *Restitution and Implied Contracts* § 38 (2001) (footnotes omitted).

any of the elements of a quantum meruit claim.

■ Cherry also makes a claim for attorney's fees based on the Equal Protection Clause of the United States Constitution. He points to the fact that KRS 453.260(1) and 453.260(3) permit a party prevailing on the merits in a civil action brought by the Commonwealth against him to recover attorney's fees. But Cherry argues that statute does not apply equally to employees of a political subdivision of the state, such as Cherry.[31] He argues that based on this statute, wrongfully discharged state employees are able to recover attorney's fees while a wrongfully discharged deputy sheriff such as himself are not, which he asserts violates the Equal Protection Clause.

But KRS 453.260(1)(a) allows attorney's fees to a party "which prevails by a final adjudication on the merits in ... [a] civil action brought by the Commonwealth against the party[.]" Simply put, the case at hand did not begin as a civil action brought by the Commonwealth; therefore, KRS 453.260(1) and (3) are not implicated.

### D. Lost Opportunity to Pursue Chosen Profession.

■ Cherry asserts that the circuit court erred in denying him damages for the lost opportunity to engage in his chosen profession of law enforcement. Again, we disagree.

We find no authority under the merit board statutes for either the Board or circuit court to award damages of this nature. And Cherry has not cited, nor has our independent research produced, any instance in which such damages have been recognized in Kentucky. Thus, Cherry's claim regarding damages for the lost opportunity to pursue his chosen career is without merit.

### E. Punitive Damages.

■ Cherry asserts that the circuit court erred in refusing to grant his claim for punitive damages. He points out that punitive damages may be recovered in a claim for wrongful discharge in violation of public policy [32] and in a claim for breach of employment contract where the employer's action before or after discharge involved tortious conduct which would traditionally be associated with the tort of outrage.[33] However, Cherry fails to consider that these cases involve tort actions while the instant case is an action to enforce an administrative order. Furthermore, we find no support for the proposition that the circuit court had the authority to award punitive damages in the instant case. So the circuit court did not err by declining to do so.

### F. Post–Judgment Interest.

■ Cherry's notice of appeal indicates that he is appealing, in part, from the July 23, 2004, order denying his motion for post-judgment interest. But Cherry's brief never refers to this order or the issue of post-judgment interest. As a general rule, assignments of error not argued in an appellant's brief are waived.[34] Thus, we deem Cherry to have waived this issue.

---

**31.** *See* KRS 453.255(1).

**32.** *Berrier v. Bizer,* 57 S.W.3d 271, 283 (Ky. 2001).

**33.** *See Audiovox Corp. v. Moody,* 737 S.W.2d 468, 471 (Ky.App.1987); *Kroger Company v. Willgruber,* 920 S.W.2d 61, 67 (Ky.1996).

**34.** *See Commonwealth v. Bivins,* 740 S.W.2d 954, 956 (Ky.1987). *Cf. Grange Mutual Insurance Co. v. Trude,* 151 S.W.3d 803, 815 (Ky.2004).

### G. Expurgation of Personnel File.

■ Cherry asserts that the circuit court erred by failing to grant his motion seeking the expurgation of his personnel file to remove any reference to his termination for misconduct.[35] Cherry's entire argument on this point of appeal is as follows: "There is really nothing more to say about this error. Without doubt, Sheriff Frank Augustus should be ordered to straighten out Steve Cherry's deputy sheriff personnel file so that anyone reviewing it would not conclude that he had been discharged from employment for misconduct." Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v) states, in part, that an appellant's brief shall contain "[a]n 'ARGUMENT' conforming to the Statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law...." Because Cherry's brief lacks any citations of authority pertinent to the issue of expurgation of his personnel file, it does not comply with CR 76.12(4)(c)(v). Rather than ordering the brief stricken for this deficiency, a more appropriate penalty in this instance is to refuse to consider Cherry's contentions regarding the expurgation of his personnel file.[36] Therefore, we need not address the merits of Cherry's claim that the circuit court erred by refusing to order Sheriff Augustus to expurgate Cherry's personnel file.

### VI. DISPOSITION.

Finding no error, we affirm the circuit court in all respects as to Cherry's direct appeal and Sheriff Augustus's cross-appeal.

**ALL CONCUR.**

---

35. The circuit court did not address this issue at all in any of the orders on appeal. We must assume that the court's failure to address the issue therein was conclusive of the court's intent to deny Cherry the relief he sought. *See, e.g., Pegler v. Pegler*, 895 S.W.2d 580, 581 (Ky.App.1995).

36. *See, e.g., Pierson v. Coffey*, 706 S.W.2d 409 (Ky.App.1985), (electing not to consider three of appellants' contentions as appropriate remedy for failure to comply with CR 76.12 where appellants merely reiterated their Statement of Points and Authorities in the Argument portion of their brief and failed to make any true argument or cite any authorities in support of these contentions.).