RENDERED:  FEBRUARY 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0756-ME

A.B.                                                      APPELLANT


|       | APPEAL FROM CAMPBELL CIRCUIT COURT |
|-------|------------------------------------|
| v.    | HONORABLE ABIGAIL E. VOELKER, JUDGE |
|       | ACTION NO. 23-AD-00067             |


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
C.K.; AND K.K., INFANT CHILD                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE:  On May 23, 2024, the Campbell Circuit Court ("family

court") entered findings of fact and conclusions of law, along with a separate

judgment, terminating the parental rights of Appellant, A.B. ("Father"), to K.A.K.

("Child").  On appeal, Father argues that the family court clearly erred in

determining that termination was in Child's best interest. After carefully reviewing the record and applicable law, we affirm.

## I. BACKGROUND

Child was born to Father and C.K. ("Mother") in March of 2022.[1] Shortly after birth, Child tested positive for illegal substances. Medical staff alerted the Cabinet for Health and Family Services ("Cabinet"), which filed a petition for Dependency, Neglect, and Abuse ("DNA") and removed Child from Mother's care. On March 17, 2022, the Cabinet was granted temporary custody, and Child was placed in foster care, where she has remained since. The Cabinet filed a petition to terminate parental rights on December 11, 2023.

The family court held an evidentiary hearing on May 17, 2024, during which two witnesses testified. The Cabinet's sole witness, Catherine Prather-Dixon, the family's ongoing social worker, testified that after Father's paternity was established, she attempted to locate him and develop a case plan.[2] Due to Father's known criminal history, Ms. Prather-Dixon sent letters to various area jails and correctional facilities, as well as to relatives with whom Father had

---

[1] Mother voluntarily consented to the termination of her own parental rights on January 24, 2024. Kentucky Revised Statutes ("KRS") 625.041. Mother has neither appealed nor taken any action in relation to Father's appeal. She is referenced herein only insomuch as is necessary to place this appeal in the proper factual and procedural context.

[2] Mother and Father were no longer together when Child was born. Initially, Mother identified her then-current paramour as Child's father. She later provided Father's name, and genetic testing confirmed his paternity. Mother also signed a paternity affidavit.

occasionally lived when not incarcerated. Father signed for a certified letter sent to one such private residence but never contacted Ms. Prather-Dixon. In February 2024, Child's paternal grandmother reached out to the Cabinet expressing interest in being involved in Child's life. However, she declined to seek custody, citing Child's extensive medical needs.

Ms. Prather-Dixon testified that Father has a long history of substance abuse and related arrests. Although he has been incarcerated for much of Child's life, he has not been in custody the entire time. To Ms. Prather-Dixon's knowledge, Father has never seen Child, has no bond with her, and has never provided support. Given Father's troubled past and failure to establish a case plan, Ms. Prather-Dixon believed he was unlikely to be in a position to care for Child in the foreseeable future.

Ms. Prather-Dixon also testified that Child has cerebral palsy and requires significant medical care, including regular medical and therapy appointments. Since the Cabinet obtained custody, Child has lived with the same foster family, with whom she is bonded and refers to as "Mom and Dad." The foster parents are capable of meeting Child's medical needs, and Ms. Prather-Dixon believes Child is thriving in their care. The foster family is willing to adopt Child should parental rights be terminated.

Father testified in his own defense. He is presently incarcerated in Ohio for having weapons under a disability. At the time of the evidentiary hearing, he indicated that he expected to be released from custody in September of 2024. Father testified that during this latest incarceration, he has turned his life around and made positive changes that he believes will enable him to eventually be a good parent. To this end, he testified that he completed an intensive drug treatment program, participated in Narcotics Anonymous and Thinking for a Change classes, and has been working toward obtaining his General Education Degree. His plan upon release is to move in with his mother, get a job, and stay focused on his new path.

Father testified that he learned Child was in the Cabinet's custody sometime around mid-2022 when Mother informed him of her birth. He denied receiving the Cabinet's letter while out of custody, stating that he only received mail from the Cabinet during his incarceration. Although he recalled receiving four such letters, he admitted that he never responded. Father stated that the potential loss of his parental rights motivated him to change his circumstances and pursue a different path.[3] Lastly, Father admitted that he has never seen Child.

---

[3] Father has other children, none of whom is in his custody. He testified that, unlike with Child, he was never at risk of losing parental rights to them, and, therefore, they did not motivate him to change his lifestyle.

The trial court entered its Findings of Fact and Conclusions of Law on May 23, 2024, which terminated Father's parental rights. This appeal followed.

## II. STANDARD OF REVIEW

KRS 625.090 sets forth the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to his child. First, as it concerns this appeal, the family court must determine that Child is an abused or neglected child or that the child was previously determined to be an abused or neglected child by a court of competent jurisdiction. KRS 625.090(1)(a)1.-2. Second, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or 625.050. KRS 625.090(1)(b). Third, the family court must find that termination is in the best interest of the child. KRS 625.090(1)(c). Finally, the family court must find by clear and convincing evidence the existence of one or more of the eleven grounds (a) through (k) listed in KRS 625.090(2). Even if all these requirements are met, the family court may choose in its discretion not to terminate a parent's parental rights if the parent has established by a preponderance of the evidence that the child will not continue to be an abused or neglected child if returned to the parent. KRS 625.090(5).

Termination of parental rights cases are tried in private hearings before the family court. KRS 625.080. After the hearing, the family court is required to make findings of fact and conclusions of law supporting its decision on

the termination petition.  *Id.*  "Broad discretion is afforded to [family] courts to determine whether parental rights should be terminated, and our review is limited to a clearly erroneous standard."  *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021).

Factual findings which are supported by substantial evidence of record are not clearly erroneous.  *R. M. v. Cabinet for Health and Family Services*, 620 S.W.3d 32, 37 (Ky. 2021).  "Substantial evidence is that which is sufficient to induce conviction in the mind of a reasonable person."  *Id.*  "When the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions which we review *de novo.*  If the [family] court's factual findings are not clearly erroneous and the legal conclusions are correct, we are limited to determining whether the [family] court abused its discretion in applying the law to the facts."  *H.L.O.*, 621 S.W.3d at 462 (citations omitted).

### III. ANALYSIS

Father's sole assignment of error concerns the best interest of the child prong of the termination statute, KRS 625.090(1)(c).[4]  Specifically, Father argues that the family court failed to properly consider that KRS 625.090(3)(d)

---

[4] Thus, Father has waived any arguments under the other three prongs of the termination statute. *Kentucky State University Foundation, Inc. v. Frankfort Newsmedia, LLC*, 694 S.W.3d 394, 399

and KRS 625.090(3)(e) weigh in Father 's favor.

Upon a petition for the termination of parental rights, the family court is to consider:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;
>
> (d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

---

(Ky. App. 2024) (quoting *Cherry v. Augustus*, 245 S.W.3d 766, 780 (Ky. App. 2006)) ("As a general rule, assignments of error not argued in an appellant's brief are waived.").

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

KRS 625.090(3). "As the statute itself notes, the factors are to be 'considered' in deciding whether termination is in the child's best interest. They do not necessarily dictate a result and are always subordinate to the best-interest finding that the court is tasked with making." *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 115 (Ky. 2012).

With respect to Child's best interest, the family court's findings of fact and conclusions of law provide:

> B. Termination of parental rights is in the best interest of [Child] based on the following:
>
> 1. Prior to the filing of this petition, reasonable efforts have been made by the Cabinet to reunite the child with her father, but those efforts have been unsuccessful.
>
> 2. The Cabinet for Health and Family Services has offered or provided all reasonable services to the family, including case planning, referrals to community partners, and supervised visitation.
>
> 3. Despite the availability of these services, [Father] failed, refused or ha[s] been unable to make sufficient effort and adjustments in his circumstances, conduct or conditions to make it in the interest to return [Child] to his home within a reasonable period of time, considering the age of the child.

"While the family court's written order did not specifically address each factor, its findings lead us to believe that each factor was properly

considered." *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 212 (Ky. 2014). Specifically, on page three of the family court's findings of fact and conclusions of law, the family court detailed the steps Father has taken during his most recent incarceration to better himself, including working on his education and taking steps to overcome his drug addiction.

Recognizing that the best interest analysis is child centered, the family court did not focus its analysis entirely on Father's progress or lack thereof. The family court's assessment of Child's needs was paramount. To this end, the family court considered Child's unique medical needs, the length of time Child had been with foster parents, the fact that Child was bonded to her foster family, Father's history of failing to establish a relationship with Child, and Father's failure to work with the Cabinet during periods of time he was not incarcerated. Ultimately, the family court concluded that it was important for Child to remain in a home where her medical needs could be met, and that Child's foster parents were better equipped to provide Child with the long-term care she required.

Having carefully reviewed the family court's findings of fact and conclusions of law, we are confident that it considered all the relevant best interest factors. At the end of the day, the family court appropriately put the needs of Child first. While Father's recent progress is commendable, it comes too late. Child

requires more care and stability in her life than Father can provide to her within the foreseeable future.

We do not arrive at this conclusion lightly. "While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution. It is a very serious matter." *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008). We simply cannot agree that the family court did not properly recognize or apply the best interest factors.

### IV. CONCLUSION

For the foregoing reasons, we affirm the order of the Campbell Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Martin A. Haas, Jr.
Crescent Springs, Kentucky

BRIEF FOR APPELLEE CABINET FOR HEALTH AND FAMILY SERVICES, COMMONWEALTH OF KENTUCKY:

Kevin Martz
Covington, Kentucky